UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| VARISCITE NY ONE, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> STATE OF NEW YORK; NEW YORK STATE OFFICE OF CANNABIS MANAGEMENT; AND CHRISTOPHER ALEXANDER, <br><br> *Defendants.* | Civil Action No. <br> 1:22-cv-01013 (GLS/DJS) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER**

Thomas J. Higgs, Esq.
E. STEWART JONES HACKER MURPHY, LLP
Bar Roll No.: 106047
*Attorneys for Plaintiff – Local Counsel*
28 Second Street
Troy, NY 12180
(518) 274-5820
Email: thiggs@joneshacker.com

Christian E. Kernkamp, Esq.
KERNKAMP LAW, APC
*Pro Hac Vice – Admission Pending*
New York Reg. No.: 5721923
*Attorneys for Plaintiff – Lead Counsel*
1801 Century Park E. 24 Fl.
Los Angeles, CA 90067
(213) 214-3030
Email: ck@kernkamplaw.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

I.   INTRODUCTION ................................................................................................ ii

II.  STATEMENT OF FACTS ....................................................................................3

III. ANALYSIS ...........................................................................................................8

   A. Plaintiff Has Shown a Likelihood of Success on the Merits ...................................8

      1. *The CAURD Application Program Discriminates Against Interstate Commerce and Falls Within the First Tier Analysis* ..................................8
      2. *Plaintiff Satisfies All CAURD Requirements Except the Unconstitutional Residency Requirements…………………….* ..............................................9
      3. *The Challenged CAURD Requirements Do Not Advance a Legitimate Local Purpose that Cannot Be Adequately Served by Reasonable Nondiscriminatory Alternatives* ................................................................10

   B. Plaintiff Will Suffer Irreparable Harm Absent an Injunction ................................11

   C. The Balance of Equities Favors Plaintiff ................................................................13

   D. An Injunction Is in the Public Interest ...................................................................14

   E. The Court Should Not Require an Injunction Bond ..............................................14

IV.  PRELIMINARY RELIEF IS WARRANTED ON AN EXPEDITED BASIS......15

V.   CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*AIM Int'l Trading, LLC v. Valcucine SpA*, 188 F. Supp. 2d 384 (S.D.N.Y. 2002) ........................12

*Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) ..............16

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573 (1986)........................12

*Color Me House, Inc. v. Discovery Commc'ns, Inc.*, Case No. C12-5935-RJB, 2013 WL 1283806 (March 27, 2013)..................................................................................................................19

*Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328 (2008)..................................................................15

*Finch v. Treto*, No. 22 C 1508, 2022 WL 2073572 (N.D. Ill. June 9, 2022)..................................16

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) ...............................................19

*Gov't Emples. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482 (E.D.N.Y. 2021).......................12

*Granholm v. Heald*, 544 U.S. 460 (2005).......................................................................................14

*Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630 (7th Cir. 2005) ....................................17

*Lowe v. City of Detroit*, 544 F. Supp. 3d 804 (E.D. Mich. 2021)........................................14, 15, 16

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)........................................................................16

*Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 554 F. Supp. 3d 177 (D. Me. 2021) ..5, 15

*Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, No. 21-1719, 2022 WL 3442203 (1st Cir. Aug. 17, 2022)........................................................................................15

*NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913 (D. Me. Aug. 14, 2020)........................................................................................................................14, 17

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) ...........................................................................13

*Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865 (7th Cir. 2009).........17

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991) .17

*South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018) ..................................................................14

*Starlight Sugar, Inc. v. Soto*, 114 F.3d 330 (1st Cir. 1997) ............................................................17

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) .........................17

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449 (2019)..............................14

*Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985 (W.D. Mo. 2021)...................5, 15

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ............................................................12

## **STATUTES/REGULATIONS**

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.1 ...................................................................................7

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(a)(1) ..............................................................8, 13, 14

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(a)(2)(i) .................................................................8, 13

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(a)(2)(ii) .....................................................................8

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(c) ..............................................................................8

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(c)(1) .........................................................................8

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(c)(2)(iii) ...............................................................9, 13

N.Y. Comp. Codes R. & Regs. tit. 9, § 116.4(c)(2)(i-ii) ..................................................................8

NY CANBS § 11(4)..........................................................................................................................7

NY CANBS §  1 ...............................................................................................................................7

NY CANBS §  3 ..........................................................................................................................7, 13

**MEMORANDUM OF LAW**

I.  **INTRODUCTION**

Plaintiff Variscite NY One, Inc. ("Plaintiff") asks this Court to issue a temporary restraining order and an order to show cause why a preliminary injunction should not issue to enjoin Defendants State of New York, New York Office of Cannabis Management, and Christopher Alexander (collectively, "Defendants") from their knowing, voluntary, and continuing violation of Plaintiff's constitutional rights.  In violation of the dormant Commerce Clause of the U.S. Constitution, Defendants established laws and regulations to accept applications for cannabis retail dispensary licenses only from applicants that have a "significant presence in New York State," while rejecting applications from equally or more qualified applicants from other states, like Plaintiff.  Plaintiff brings this litigation to enjoin the sections of the laws and regulations that prevent Defendants from processing applications from out-of-state applicants.  Plaintiff seeks preliminary relief to prevent Defendants from awarding any cannabis retail dispensary licenses during the pendency of this litigation for the five geographic areas of New York where Plaintiff applied, as the number of allowable licenses per geographic area is limited and the loss of a new business opportunity cannot be adequately measured for monetary damages at the end of this litigation.

Defendants were aware at all times that their cannabis retail dispensary license application program is unconstitutional.  Defendants commenced the program *after* the Supreme Court held that the dormant Commerce Clause prevents a state from imposing an in-state residency requirement on applicants for liquor licenses in 2019 (*Tennessee Wine & Spirits Retailers Association v. Thomas*); *after* the First Circuit held that the dormant Commerce Clause applies to state cannabis license application programs and prevents states from imposing an in-state residency requirement in 2022 (*Northeast Patients Group v. United Cannabis Patients & Caregivers of Maine*); and *after* federal district courts enjoined cannabis license application programs with in-state residency requirements or in-state residency preferences in the State of

Missouri, the City of Detroit, Michigan, and the City of Portland, Maine from 2020 onward (*Toigo v. Department of Health & Senior Services*; *Lowe v. City of Detroit*; *NPG, LLC v. City of Portland, Maine*).

From August 25 to September 26, 2022, Defendants accepted applications for cannabis retail dispensary licenses through their Conditional Adult-Use Retail Dispensary ("CAURD") Application Program. To be eligible for the CAURD Application Program, a company must be at least 30% owned by an individual who has sole control over the company and has a "significant presence in New York State," such as residing or owning property here. That individual must also be "justice involved," meaning the individual or a qualifying relative was convicted of a cannabis crime under New York state law. At least 51% of the company must be owned collectively by one or more justice involved individuals.

Plaintiff will be irreparably harmed if the Court does not issue a preliminary injunction. A constitutional violation is an irreparable harm. Moreover, Plaintiff faces the irreparable harm of being frozen out of the New York cannabis retail market, as the State of New York will issue only 150 storefront retail licenses, all of which will be issued under the CAURD Application Program Plaintiff challenges herein. Even if the State grants additional licenses at a later time, Plaintiff will have lost the advantages to first movers in a new market (like customer loyalty and prime business locations), and such damages cannot be adequately measured.

The balance of equities favors Plaintiff. Defendants were aware the CAURD Application Program is unconstitutional, but they proceeded anyway. Neither Defendants nor the companies that applied in the CAURD Application Program face any harm from a preliminary injunction. Plaintiff filed this lawsuit on September 26, 2022, before the application period closed. Defendants have not selected the highest-scoring applications or issued any licenses. Applicants did not have to spend any money on the applications, other than the application fee itself. Applicants will not have ongoing costs while the preliminary injunction is in place, such as rent on their proposed business locations, because Defendants did not require applicants to identify proposed business locations, and in fact, Defendants require applicants to lease their business premises from Defendants if they are selected among the highest-scoring applicants.

The public interest favors an injunction. The public has an interest in having unconstitutional laws enjoined. The public further has an interest in robust competition, including from out of state, for the limited license available to serve the public demand for legal adult use cannabis.

## II. STATEMENT OF FACTS

### A. The CAURD Application Process Favors New York Residents

#### 1. *The Cannabis Law*

On March 31, 2021, the State of New York enacted the Marihuana Regulation & Taxation Act, with the short title of "Cannabis Law." NY CANBS § 1.[1]

Under Section 3 of the Cannabis Law, a person (including an entity) is allowed to be an "applicant" for a cannabis license if that person "has a significant presence in New York state, either individually or by having a principal corporate location in the state; is incorporated or otherwise organized under the laws of this state; or a majority of the ownership are residents of this state." NY CANBS § 3.

Under Section 11 of the Cannabis Law, the OCM and the executive director have the power to prescribe the form of applications for cannabis licenses. NY CANBS § 11(4).

#### 2. *The Cannabis Regulations*

On August 3, 2022, the OCM adopted part 116 of Chapter II of Subtitle B of Title 9 of the Official Compilation of Codes, Rules and Regulations of the State of New York (the "Cannabis Regulations"). N.Y. Comp. Codes R. & Regs. tit. 9 ("NYCRR"), § 116.1, *et seq*.

Section 116.4(a) of the Cannabis Regulations lists the "minimum requirements [that] must be met to become an eligible applicant" for an adult-use recreational cannabis dispensary license.

Under Section 116.4(a)(1), an applicant must have "(i) a significant presence in New York State, either individually or by having a principal corporate location in the state; (ii) it is incorporated or otherwise organized under the laws of New York State; or (iii) a majority of the

---

[1] The Cannabis Laws and Cannabis Regulations are different for nonprofit and tax-paying entities. The Complaint and this application focus on the laws and regulations for tax-paying entities.

3

ownership of the applicant are residents of New York State by being physically present in the state no less than 180 calendar days during the current year or 540 calendar days over the course of three years[.]" NYCRR § 116.4(a)(1).

Under Section 116.4(a)(2), if an applicant is an entity with one or more individual owners, the applicant must have one or more "justice involved" individual owners who collectively hold at least 51% of the equity of the applicant. A justice involved individual "(a) was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one; (b) had a parent, legal guardian, child, spouse, or dependent who was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one; or (c) was a dependent of an individual who was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one[.]" NYCRR § 116.4(a)(2)(i).

Under Section 116.4(a)(2), the applicant must provide proof of the justice involved individual's residence at the time of the individual's arrest or conviction. NYCRR § 116.4(a)(2)(ii). Plaintiff believes on information and belief, and thereon allege, that Defendants will score an applicant higher if the individual's residence at the time of the individual's arrest or conviction was in New York.

Section 116.4(c) sets forth the criteria by which Defendants will evaluate the CAURD applications. NYCRR § 116.4(c).

Under Section 116.4(c)(1), the application criteria includes whether the justice involved individual himself/herself (as opposed to a relative) was convicted of a cannabis crime under New York law. NYCRR § 116.4(c)(1).

Under Section 116.4(c)(2), the application evaluation criteria includes whether the justice involved individual's primary residence at the time of the arrest or conviction (i) had a historically high rates of arrest, conviction, or incarceration for marihuana-related offenses or (ii) had historically low median income. NYCRR § 116.4(c)(2)(i-ii). Plaintiff believes on information and belief, and thereon allege, that Defendants will score an applicant higher if the individual's residence at the time of the individual's arrest or conviction with a historically high rate of arrest,

4

conviction, or incarceration for Marihuana-related offenses and historically low median income was in New York.

Under Section 116.4(c)(2), the application evaluation criteria includes whether the justice involved individual lived-in housing provided by New York Public Housing Authority. NYCRR § 116.4(c)(2)(iii).

### 3. *Frequently Asked Questions Document*

The OCM published a *Conditional Adult-Use Retail Dispensary Frequently Asked Questions* document. That document provides the question: "What documents can I provide to prove a significant New York State presence?" It then provides the following answer:

> Applicants are required to have a significant New York State presence or to otherwise satisfy the definition of applicant in the Cannabis Law and may be asked to submit documentation to prove such. If you are asked to submit documentation, acceptable documentation includes:
> - Proof of the individual with sole control's residency in New York State (any residency document listed in Question 10);
> - Checking, savings, retirement, or brokerage statements showing assets in New York State;
> - Tax filings showing assets, accounts, or property in New York State;
> - Deeds, titles, mortgage documents, or homeowner warranties showing property ownership in New York State; or
> - Any other proof of New York State presence as determined by the Office.

(Decl. Jensen, Ex. 11.)

### 4. *The Cannabis License Application*

Defendants required applicants to submit their applications online through Defendants' New York Business Express application website. Defendants accepted applications through the system from August 25, 2022 through September 26, 2022. (Decl. Jensen, Ex. 1.)

The login page for the New York Business Express application website provides an "Overview" of the application requirements. It states: "To be eligible as an individual or as a taxable entity, applicants must meet all of the following requirements: • A significant presence in New York State • Majority of the retail dispensary business is owned and controlled by a justice involved person (or people) with qualifying business ownership experience • . . . ." It also provides a definition of justice involved person: "Justice Involved means someone who has been convicted

of a marihuana-related offense in New York State before 3/31/2021 or is the spouse, child, legal guardian, or dependent of someone who has been convicted of a marihuana-related offense in NYS before 3/31/2021." (Decl. Jensen, Ex. 1.)

Applicants must log into the New York Business Express application website to submit their applications. The application for taxable entities requires the applicant to check a box stating that a person with sole control over the applicant has a significant New York presence. If the applicant does not check that box, the applicant will not be allowed to proceed to the next webpage of the application. Instead, the applicant will receive the error message: "The business principal with sole control over the CAURD applicant must have significant presence in New York State to be eligible for a CAURD license." (Decl. Jensen, Ex. 2.)

The application for taxable entities also requires the applicant to list individuals owning at least 51% total equity of the applicant who are justice involved. The application again explains that "A justice-involved individual is an applicant or an individual with ownership interest in an applicant that has been convicted of a marihuana-related offense in New York State before March 31, 2021, or is the parent, spouse, child, guardian, or dependent of someone who has been convicted of a marihuana-related offense in New York State before March 31, 2021." (Decl. Jensen, Ex. 3.)

The application further explains that a justice involved individual must have a cannabis conviction under New York law:

> For the justice-involved criteria, unless otherwise prohibited under Cannabis Law Section 137, a marihuana-related offense is defined as: An offense described under article 221 *of the New York State Penal Law* (Offenses Involving Marihuana) prior to its repeal on March 31, 2021; or An offense described under article 220 or section 240.36 *of the Penal Law* where the substance involved was marihuana, that occurred prior to the creation of article 221 in 1977; or An arrest for an offense *as described above* that ultimately led to a conviction for another offense, such as non-drug offense, violation, or misdemeanor, by means of a plea deal or other mechanism.

(Decl. Jensen, Ex. 3.) (Emphasis added)

The application requires applicants to check a box for yes or no to the question: "Has the

6

above owner been convicted of a marihuana-related offense in New York State before March 31, 2021, or are they the parent, spouse, child, guardian, or dependent of someone who has been convicted of a marihuana-related offense in New York State before March 31, 2021?" If the applicant selects no, the applicant will not be allowed to proceed to the next webpage of the application, and instead will receive the error message: "In order to be eligible for a CAURD license, an individual with sole control must hold at least 30% of the entity and meet all CAURD eligibility criteria and justice involved invidiuals [sic] must hold at least 51% of the entity." (Decl. Jensen, Ex. 4.)

On the next webpage of the application, the applicant must upload documentation of the justice involved individual's conviction for the New York marijuana crime. (Decl. Jensen, Ex. 5.)

The application also asks, "Has the applicant or does the applicant intend to apply for New York State certified Minority-Owned Business, Woman-Owned Business, Minority Woman-Owned Business or Service-Disabled Veteran-Owned Business status?" (Decl. Jensen, Ex. 6.)

### B. The CAURD Application Program Requires Applicants to Select up to Five Geographic Areas

Defendants required CAURD applicants to select up to five geographic regions of New York State for which the application would be considered. (Decl. Jensen, Ex. 7.) Defendants divided the State into fourteen geographic regions: Brooklyn; Capital Region; Central New York; Finger Lakes; Long Island; Manhattan; Mid-Hudson; Mohawk Valley; North Country; Queens; Southern Tier; Staten Island; the Bronx; and Western New York. (Decl. Jensen, Ex. 8.)

### C. Plaintiff Satisfies All Application Requirements Except the Unconstitutional New York Requirements and New York Preferences

Plaintiff applied in the CAURD Application Program. (Decl. Jensen ¶ 10.) Plaintiff satisfies all requirements of the Cannabis Law and Cannabis Regulations to apply in the CAURD Application Program except that its 51% owner's cannabis conviction occurred under Michigan law rather than New York law and he has no significant presence in New York. (Decl. Jensen ¶ 13.)

Variscite NY One, Inc. is 51% owned by an individual who has a cannabis conviction

7

under Michigan law. (Decl. Gay ¶ 5, Ex. 1.) At the time of his arrest and conviction, he lived in an area that (i) had a historically high rates of arrest, conviction, or incarceration for marihuana-related offenses and (ii) had historically low median income in Michigan according to a study published by the State of Michigan. (Decl. Jensen, Ex. 9.) The individual resides in Michigan and has no property or other significant presence in New York. (Decl. Gay ¶ 4.) If Variscite NY One, Inc. is selected for a license, the 51% owner will have sole control within the meaning of Cannabis Regulation section 116.4(b). (Decl. Jensen ¶ 11.) Variscite NY One, Inc.'s 51% owner owned more than 10% of a business that was profitable for more than two years. (Decl. Gay, ¶¶ 6-7 Exs. 6-7.)

Variscite NY One, Inc. identified the following five geographic areas in its CAURD Program Application: Finger Lakes; Central New York; Western New York; Mid-Hudson; and Brooklyn. (Decl. Jensen ¶ 12.)

## III. ANALYSIS

Courts apply the same standard for granting a temporary restraining order and a preliminary injunction. *AIM Int'l Trading, LLC v. Valcucine SpA*, 188 F. Supp. 2d 384, 386 (S.D.N.Y. 2002). The plaintiff must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm without a preliminary injunction; (3) the balance of equities favors the plaintiff; and (4) the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *Gov't Emples. Ins. Co. v. Relief Med., P.C.*, 554 F. Supp. 3d 482, 498 (E.D.N.Y. 2021).

### A. <u>Plaintiff Has Shown a Likelihood of Success on the Merits</u>
#### 1. *<u>The CAURD Application Program Discriminates Against Interstate Commerce and Falls Within the First Tier Analysis</u>*

A court evaluates a dormant Commerce Clause challenge using a two-tiered analysis. *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578-79 (1986). **At the first tier**, a court determines whether "a state statute directly regulates or discriminates against interstate commerce, or [whether] its effect is to favor in-state economic interests over out-of-state interests." *Id*. at 579. **At the second tier**, absent such discrimination, if "a statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive

in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

The Cannabis Laws, Cannabis Regulations, and the CAURD Application Program directly discriminate against interstate commerce and fall into the first tier. Cannabis Law Section 3 and Cannabis Regulations Section 116.4(a)(1) require an applicant to have a "***significant presence in New York state***," by having a principal corporate location in New York, being incorporated or organized in New York, or having a majority of the ownership be residents of New York. NY CANBS § 3; NYCRR § 116.4(a)(1).

Cannabis Regulations Section 116.4(a)(2) requires applicants with one or more individual owners (such as Plaintiff) to have one or more "justice involved" individual owners who collectively hold at least 51% of the equity of the applicant. A person is justice involved if the person or the person's qualifying relative was convicted of a cannabis crime in New York. NYCRR § 116.4(a)(2)(i).

Cannabis Regulations Section 116.4(c)(2) gives additional consideration to applicants who lived in housing provided by New York Public Housing Authority. NYCRR § 116.4(c)(2)(iii).

### 2. *Plaintiff Satisfies All CAURD Requirements Except the Unconstitutional Residency Requirements*

To qualify to participate in the CAURD Application Program, an applicant must be at least 51% owned by one or more "justice involved" individuals who were convicted (or have a qualifying relative who was convicted) of a cannabis crime under New York law. NYCRR § 116.4(a)(2)(i). The applicant must be at least 30% owned by a single justice involved individual who owned at least 10% of a "qualifying business" that made a profit for at least two years. NYCRR § 116.4(a)(2)(iii). The applicant must have a "significant presence in New York." NYCRR § 116.4(a)(1).

Plaintiff applied in the CAURD Application Program. (Decl. Jensen ¶ 10.) Plaintiff is 51% owned by an individual who has a cannabis conviction under Michigan law. (Decl. Gay ¶ 5, Ex. 1.) At the time of the individual's arrest and conviction, he lived in an area in Michigan that had (i) a historically high rates of arrest, conviction, or incarceration for marihuana-related offenses and (ii) a historically low median income according to a study published by the State of Michigan. (Decl. Gay, ¶ 4; Decl. Jensen, Ex. 9.) The individual owned more than ten percent of

9

a business that was profitable for more than two years.  (Decl. Gay, ¶¶ 6-7, Exs. 6-7.)

Plaintiff satisfies all requirements of the Cannabis Law and Cannabis Regulations to apply in the CAURD Application Program except that its 51% owner's cannabis conviction occurred under Michigan law rather than New York law and he has no significant presence in New York.

Variscite NY One, Inc. applied for the following five geographic areas, as defined by Defendants in the CAURD Program Application Program: Finger Lakes; Central New York; Western New York; Mid-Hudson; and Brooklyn.  (Decl. Jensen ¶ 12.)

### 3. *The Challenged CAURD Requirements Do Not Advance a Legitimate Local Purpose that Cannot Be Adequately Served by Reasonable Nondiscriminatory Alternatives*

In the first tier of the dormant Commerce Clause analysis—where a law discriminates against interstate commerce or in effect favors in-state economic interests—courts "generally str[ike] down the statute without further inquiry." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2471 (2019) (citing *Granholm v. Heald*, 544 U.S. 460, 472 (2005)). This includes striking down cannabis licensing laws with residency preferences or residency requirements because "State laws that discriminate against interstate commerce face 'a virtually per se rule of invalidity.'" *NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913, at *11 (D. Me. Aug. 14, 2020) (quoting *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2091 (2018); *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 812 (E.D. Mich. 2021) ("'[a] discriminatory law is virtually per se invalid . . . .'") (citing *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338-39 (2008)).

In the only cannabis license dormant Commerce Clause challenge to reach a circuit court, the First Circuit affirmed a District of Maine injunction against a residency requirement.  *Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, No. 21-1719, 2022 WL 3442203, at *13 (1st Cir. Aug. 17, 2022).

In this case, the Court must analyze the Cannabis Law and Cannabis Regulations, and the CAURD Application Program they created, under the first tier because the Cannabis Law and Cannabis Regulations favor New York residents over out-of-state residents on their faces.

When a law falls into the first tier, the government bears the burden of proving the law

"advance[s] a legitimate local purpose that ***cannot*** be adequately served by reasonable nondiscriminatory alternatives." *Id*. (quoting *Granholm*, 544 U.S. at 476) (emphasis added). To the best of Plaintiff's knowledge, no jurisdiction has successfully argued residency preferences or residency requirements serve a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory means.

This Court would not be the first to halt an unlawful cannabis licensing program. It would join numerous other federal courts that have struck down cannabis licensing laws that require or favor local residency. See *Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, No. 21-1719, 2022 WL 3442203, at *13 (1st Cir. Aug. 17, 2022); *Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985, 990 (W.D. Mo. 2021); *Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 554 F. Supp. 3d 177 (D. Me. 2021); *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 813 (E.D. Mich. 2021); *NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913, at *6 (D. Me. Aug. 14, 2020).

### B. Plaintiff Will Suffer Irreparable Harm Absent an Injunction

Plaintiff will suffer multiple irreparable harms unless the Court enjoins Defendants from issuing any licenses under the CAURD Application Program. ***First***, "In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm." *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 448 (D. Conn. 2020); see also *Gallagher v. N.Y. State Bd. of Elections*, 477 F. Supp. 3d 19, 41 (S.D.N.Y. 2020) ("Plaintiffs and Plaintiff-Intervenors have shown irreparable injury because they allege a violation of their constitutional rights in connection with election results that will soon be certified as final."); *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) ("[T]he constitutional violation alone, coupled with the damages incurred, can suffice to show irreparable harm."); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[T]here was no abuse of discretion in concluding that the Plaintiffs faced irreparable harm in the form of a deprivation of constitutional rights absent a preliminary injunction."). Where a plaintiff's business is harmed by a constitutional violation (as will happen here because Plaintiff's business will not be allowed to open), the harm is irreparable even if the plaintiff's loss of business could be compensated with monetary damages. *Am. Trucking*

11

*Associations*, 559 F.3d at 1059.

***Second***, aside from the constitutional violation, Plaintiff will suffer the irreparable harm of being excluded from the New York storefront retail cannabis market unless the Court issues a preliminary injunction. Defendants will issue only 150 storefront retail cannabis licenses. (Decl. Jensen, Ex. 10 at 17.)

Exclusion from the market is an irreparable harm. *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 816 (E.D. Mich. 2021) ("[P]laintiff has demonstrated that she will suffer irreparable injury absent an injunction, as she would, at best, be significantly disadvantaged in applying for a recreational marijuana retail license (assuming fifty percent of the licenses are reserved for legacy applicants) and, at worst, be entirely eliminated from consideration for such a license (if all of the licenses are awarded to legacy applicants)."); *Finch v. Treto*, No. 22 C 1508, 2022 WL 2073572, at *16 (N.D. Ill. June 9, 2022) ("If the court declined to grant injunctive relief as to the 2021 lotteries, it would allow the Department to proceed with issuing the first 185 licenses. Once those 185 licenses are issued, Plaintiffs' chances of obtaining their own licenses will be statistically narrowed, as the total number of licenses is capped at 500 by statute. In short, the court concludes Plaintiffs have satisfied the irreparable-harm requirement.").

***Third***, even if Plaintiff could somehow later enter the market, the delay in entering the market causes an irreparable harm. All advantages to early entrants in the market, such as access to customers who have not developed loyalty to other business, will have been claimed. See *NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913, at *11 (D. Me. Aug. 14, 2020) ("I agree that the unique context of this new market suggests that the timing of a ruling in the Plaintiffs' favor is particularly important. The Plaintiffs are not seeking to enter an established [cannabis] market, where the significance of any further delay of their participation is likely diminished. Rather, the Plaintiffs are seeking to be in the first wave of [cannabis] licensees as a new market launches and are hoping to attract customers who have not yet developed allegiances."); *Quezada v. BP Prods. N. Am., Inc.*, No. 06 CV 5378 (SJ), 2006 WL 3837720 (E.D.N.Y. Dec. 1, 2006) (temporary inability to sell goods is irreparable harm of loss of good will); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence

of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."); *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."); *Starlight Sugar, Inc. v. Soto*, 114 F.3d 330, 332 (1st Cir. 1997) ("While it is true that injunctive relief is generally inappropriate where money damages can make a plaintiff whole, we have recognized that the loss of a unique or fleeting business opportunity can constitute irreparable injury."); *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630, 632 (7th Cir. 2005) ("[I]t is precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'"); *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 872–73 (7th Cir. 2009) ("The district court concluded that the harm to Pro's was irreparable because it was difficult to ascertain the specific amount of revenue being lost, and because damages might come too late to adequately compensate the plaintiff's business.").

### C. The Balance of Equities Favors Plaintiff

A preliminary injunction will not harm Defendants. The CAURD Application Program application period ran frum August 25 to September 26, 2022. Plaintiff filed this litigation on September 26, 2022, before the application period closed. Plaintiffs doubt Defendants have even begun processing applications, and in any event, Defendants grant applicants 30 days to amend their applications in response to any deficiencies. Cannabis Regulations § 116.2(a)(35)(b)(2).

The applicants in the CAURD Application Program will not be harmed by a preliminary injunction. Applicants were not required to lease or purchase a property for their business before the CAURD Application Program, and in fact, the State will require selected applicants to lease their business premises from Defendants. Cannabis Regulations § 116.7(c)(6). The only money applicants had to spend on the CAURD Application Program is the application fee itself.

Moreover, even if the applicants had ongoing costs while the preliminary injunction is in place, "any such economic harm would be the result of these [cannabis license] applicants investing money before obtaining a license, which they did at their own risk." *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 816 (E.D. Mich. 2021).

## D. An Injunction Is in the Public Interest

"[T]he public interest is best served by enjoining the enforcement of [a cannabis licensing] ordinance that is likely unconstitutional." *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 816 (E.D. Mich. 2021).

The public interest is further served by protection of interstate participation in a cannabis market. See *Toigo*, 549 F. Supp. 3d at 996 ("The public interest is best served by the protection of [an applicant's] constitutional right to fully participate in the medical marijuana business in Missouri on the same footing as a Missouri resident, a right that is likely being violated by the State's durational residency requirement.").

## E. The Court Should Not Require an Injunction Bond

The Court should not require an injunction bond. Plaintiff is owned entirely by two individuals, with the majority being owned by a low-income justice involved individual (by design of Defendants' program). (Decl. Jensen ¶ 9.) Plaintiff is not owned by or affiliated with any other entities or individuals. (*Id.*) This litigation, which seeks to vindicate Plaintiff's constitutional rights, is being funded entirely by one of Plaintiff's individual owners. The Court should not require Plaintiff to post a bond.

A district court has the discretion to determine that no injunction bond is required. *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004); *JTH Tax LLC v. Kukla*, No. 22-cv-01542 (JS) (JMW), 2022 WL 1651074 (E.D.N.Y. Apr. 26, 2022). A court will waive the bond requirement where the plaintiff brings an action that promotes the public's interest, such as this action to enforce the dormant Commerce Clause. *Pharm. Soc. of State of New York, Inc. v. New York State Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995); *Hartford Courant Co., LLC v. Carroll*, 474 F. Supp. 3d 483, 508 (D. Conn. 2020); *Libertarian Party of Connecticut v. Merrill*, No. 15-CV-1851 (JCH), 2016 WL 10405920, at *8 (D. Conn. Jan. 26, 2016).

The moving party's size and financial resources may also be considered in setting a reduced bond amount. See *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000); *Color Me House, Inc. v. Discovery Commc'ns, Inc.*, Case No. C12-5935-RJB, 2013 WL 1283806, *10

(March 27, 2013); *BioPure Healing Prod., LLC v. WellNX Life Scis., Inc.*, No. C17-470-RSL, 2017 WL 4168279, at *1 (W.D. Wash. Sept. 20, 2017).

## IV. PRELIMINARY RELIEF IS WARRANTED ON AN EXPEDITED BASIS

This Application is properly brought on an emergency basis rather than as a noticed motion. Defendants will begin evaluating applications at any time. Plaintiff seeks preliminary relief to ensure Defendants do not award licenses to any applicants before the Court determines whether Defendants may exclude out-of-state applicants like Plaintiff. As noted above, Defendants will issue a limited number of licenses in each geographic area. (Decl. Jensen, Ex. 10 at 17.) If Defendants award licenses before the Court decides this issue, Plaintiff anticipates that Defendants will argue that it would be inequitable to rescind the licenses.

## V. CONCLUSION

For the reasons set forth above, Plaintiff ask this Court to issue a temporary restraining order and an order to show cause why an injunction should not issue to prevent Defendants from issuing any cannabis licenses under the unconstitutional CAURD Application Program for the geographic areas in which Plaintiff applied: Finger Lakes; Central New York; Western New York; Mid-Hudson; and Brooklyn.

Dated: October 4, 2022

Respectfully submitted,

**E. STEWART JONES HACKER MURPHY, LLP**

By: */s/ Thomas J. Higgs*
Thomas J. Higgs, Esq.
Bar Roll No.: 106047
*Attorneys for Plaintiff – Local Counsel*
28 Second Street
Troy, NY 12180
(518) 274-5820
Email: thiggs@joneshacker.com

**KERNKAMP LAW, APC**

By: */s/ Christian E. Kernkamp*
Christian E. Kernkamp, Esq.
*Pro Hac Vice – Admission Pending*

15

New York Reg. No.: 5721923
*Attorneys for Plaintiff – Lead Counsel*
1801 Century Park E. 24 Fl.
Los Angeles, CA 90067
(213) 214-3030
Email: ck@kernkamplaw.com