UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

VARISCITE NY ONE, INC.,

                                       *Plaintiff*,                **DECLARATION**

          -against-                                          22-CV-1013

STATE OF NEW YORK; NEW YORK STATE OFFICE        GLS/DJS
OF CANNABIS MANAGEMENT; AND CHRISTOPHER
ALEXANDER,

                                      *Defendants*.

---

     Herb Barbot, on the date noted below and pursuant to § 1746 of Title 28 of the United States Code, declares the following to be true and correct under penalty of perjury under the laws of the United States of America:

     1.     I am currently employed by the New York State ("NYS") Office of Cannabis Management (the "Agency") and my current position is Director of Operations. In this current position, my duties and responsibilities include, but are not limited to, overseeing the licensing unit and all licensing activities such as: the intake and processing of license applications; the review of license applications for eligibility consistent with applicable statutes and regulations; the background investigations conducted on all applicants and the parties involved with such applicants; and final recommendation on issuance or denial of a license.

2.	I submit this Declaration in support of the Defendants' State of New York, the Agency, and Christopher Alexander in opposition to Plaintiff's motion for a preliminary injunction.

Conditional Adult-Use Retail Dispensary Program

3.	The Marihuana Regulations and Taxation Act ("MRTA"), effective on March 31, 2021, established the Cannabis Law with the intention of regulating, controlling, and taxing marihuana to generate revenue, make investments with those most impacted by cannabis criminalization to address the collateral consequences of such criminalization, reduce the illegal drug market, increase employment, and to protect the public health, safety and welfare of the state of New York. N.Y. CANBS § 2 (2021).

4.	The State Finance Law ("SFL"), in turn, provided for the establishment of the NYS Cannabis Revenue Fund (the "Revenue Fund") under the joint custody of the NYS Comptroller and the NYS Commissioner of Taxation and Finance. N.Y. STATE FIN. § 99-ii.

5.	SFL § 99-ii (3)(d) provides, in part, that up to $50 million (the "State Funded Amount") deposited into the Revenue Fund shall be made available, whether directly or indirectly, for investment into a fund to, among other things, cover costs associated with establishing conditional adult-use retail dispensaries ("CAURD") for operation by selected licensees pursuant to the Cannabis Law.

6.	The State Funded Amount is appropriated for the costs and expenditures related to the CAURD program as set forth in SFL § 99-ii (3)(d) and as referenced in the 2022-2023 Aid to Localities Appropriation bill (S8004D, A9003D, p.65-66).

7. The State Funded Amount is authorized to be suballocated through the Dormitory Authority of the State of New York to, among other things: (1) finance the capital costs for the design, construction and equipping of retail locations (stores) for operation by selected licensees under the CAURD program, (2) enter into lease agreements (with the landlords leasing, and the selected CAURD licensees subleasing) for the retail locations to be used as CAURD locations, (3) enter into loan agreements, and service the loans with the selected CAURD licensees, and (4) provide property management and any other services for selected CAURD licensees. N.Y. PUB. AUTH. § 1678(30-32).

8. The selected CAURD licensees serve as the end point of the supply chain of cannabis cultivators and processors licensed by the Agency pursuant to legislation enacted in February of 2022. Ch. 18 Laws of 2022.

Conditional Adult-Use Retail Dispensary Regulations

9. The Conditional Adult-Use Retail Dispensary regulations (the "CAURD Regulations") for the CAURD program were proposed on March 10, 2022 and adopted on August 3, 2022. N.Y. COMP. CODES R. & REGS. tit. 9, § 116.1, et seq.

Definition of Applicant and Significant Presence

10. The Cannabis Law requires that an applicant must be a person that "has a significant presence in NYS, either individually or by having a principal corporate location in the state; is incorporated or otherwise organized under the laws of this state; or a majority of the ownership are residents of this state." N.Y. CANBS § 3(1) (2021).

11. Consistent therewith, the CAURD Regulations require that an applicant demonstrate "(i) a significant presence in New York State, either individually or by having a principal corporate location in the state; (ii) it is incorporated or otherwise organized under the laws of New York State; **or** (iii) a majority of the ownership of the applicant are residents of New York State by being physically present in the state no less than 180 calendar days during the current year or 540 calendar days over the course of three years[.]" N.Y. COMP. CODES R. & REGS. tit. 9, § 116.4(a)(1).

12. There are numerous ways one can satisfy the definition of applicant, only one of which relates to residency. Neither the Cannabis Law nor the CAURD Regulations restrict the number of ways to demonstrate significant presence to residency. The *Conditional Adult-Use Retail Dispensary Frequently Asked Questions* (the "CAURD FAQs") explain that significant presence means that a person has residency <u>*or*</u> any of the following "…assets (vehicles, land, etc.); real property (this includes primary, secondary, and/or rental homes), a bank account, or some other connection with or in New York State." Attached as Exhibit "A" is a true and correct copy of CAURD FAQs.

13. The Agency guidance document entitled *Completing your CAURD Application FAQ* (the "CAURD App FAQs") repeats the numerous ways one can meet the test of significant presence and adds, as an option, "[a]ny other proof of New York State presence as determined by the Office." Attached as Exhibit "B" is a true and correct copy of CAURD App FAQs.

14. A non-resident individual or entity can easily meet the definition of applicant by having a principal corporate location in NYS or by incorporating or organizing under NYS law.

4

15. Plaintiff is organized under NYS law. See Exhibit "C".

16. The requirement that an applicant have significant presence in NYS, by incorporating under NYS Law, as Plaintiff did, or locating offices in NYS, or have a majority of owners as residents of NYS, is to ensure jurisdiction over cannabis operators and retain the ability to monitor the activity of its cannabis operators, reduce diversion into the illicit market, tax and regulate the product, and enforce regulations. Cannabis remains a federally prohibited Schedule I drug. The Cannabis Law seeks to transition criminalized cannabis use into a framework of cannabis consumption rooted in public health. The Cannabis Law establishes the blueprint for an extremely rigorous regulatory regime framework, creating limited licenses, new tax structures, stringent inventory tracking obligations, a two-tier market system such as in alcohol, and a new state agency to enforce these regulations including those that operate to eliminate against diversion into the illicit market.

Cannabis-Related Offense Under NYS Laws

17. Further, pursuant to the CAURD Regulations, if an applicant is an individual, or comprised of individuals, at least one individual must be "justice involved", which means the individual, "…(a) was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one; (b) had a parent, legal guardian, child, spouse, or dependent who was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one; (c) was a dependent of an individual who was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one…" N.Y. COMP. CODES R. & REGS. tit. 9, § 116.4(a)(2)(i).

18. The CAURD Regulations define a marihuana-related offense as "a marihuana or cannabis offense defined under article two hundred twenty-one of the penal law prior to its repeal, any offense under article two hundred twenty or section 240.36 of the penal law prior to the effective date of article two hundred twenty-one of the penal law, where the controlled substance involved was marihuana, any offense that is eligible to be sealed or expunged pursuant to Chapter 131 of the Laws of 2019 or the Act or any offense identified by the Office to be a marihuana-related offense." *Id.* § 116.1(q).

19. The NYS Penal Law does not limit charges for such offenses to only NYS residents.

20. The Cannabis Law, CAURD Regulations, and Agency guidance similarly do not limit those who can be considered as justice involved individuals to only NYS residents. Moreover, while the individual needed to be convicted under the NYS Penal Law, there is no requirement that the justice involved individual had to be a NYS resident at any time. The justice involved individual could have resided in another state at the time of the conviction or the justice involved individual could have lived in NYS at the time of the conviction, but currently reside outside of NYS. Upon information and belief, thousands of individuals and their families convicted under NYS law live throughout the country. These individuals, their parents, dependents, spouses, children, living outside of NYS qualify equally for one of these very limited number of CAURD licenses which comprise only a fraction of the total number of licenses the Agency will issue. The same applies to the millions of individuals who have moved in and out of NYS over the past 20 years and the hundreds of thousands of individuals who commute into New York City from neighboring states every day. Each are eligible for this

6

license if they were convicted under the NYS Penal Law or if their family member was convicted and they lived elsewhere.

21.     In addition, not all CAURD applicant entity members need to have a NYS conviction, as the cannabis-related offense requirement only applies to the majority owner; 49% of the CAURD applicant can be owned by an individual living in any state of the nation and having no conviction of any kind.

22.     The NYS Penal Law criminalized sale and possession of cannabis by any individual regardless of their jurisdiction.

23.     The Cannabis Law and the CAURD Regulations seek, in part, to redress the harms created by the NYS Penal Law and its enforcement with respect to cannabis-related offenses. That "the impact[s] of cannabis criminalization" referred to in the Cannabis Law were those created by the NYS Penal Law is self-evident. The State of New York could not and would not, in the drafting of its own statutes, consider the penal laws of other states, make a determination that the laws of other states were justly or unjustly enacted, and codify a remedy for harms imposed by the penal law of other states.  By extension, the CAURD regulations, constructed with this framing in mind, score _any_ applicant impacted by NYS cannabis prohibition equally, regardless of their state of origin or residence.  Plaintiff's claim that the Michigan Penal Law had a similar unjust impact and that the harm that Plaintiff suffered was of analogous severity may very well be true.  It is beyond the powers and resources of the Agency and the breadth of NYS's Cannabis Law, however, to make such a determination or construct a remedy that accounts for the varieties of harms and impacts of cannabis prohibition across the 50 states.  The fact that Plaintiff was spared the brunt of NYS's aggressive drug laws does not mean

7

Plaintiff is not a victim of discrimination. It simply means that NYS does not have the power nor the resources to consider the unique nature of the Michigan Penal Law or to adopt the proposition that Plaintiff's conviction thereunder must be accepted as a precise analog for purposes of programs created to remediate the harms of NYS's cannabis prohibition.

24. The CAURD program makes available 150 CAURD licenses available to individuals and families directly impacted by a NYS Penal Law conviction and providing them with a signed retail lease, store buildout, and loan all funded by the State to start a small business in the cannabis industry.

Address at Time of Conviction in Relation to Other Areas

25. CAURD Regulations also require applicants to provide their address at the time of cannabis-related conviction. N.Y. COMP. CODES R. & REGS. tit. 9, 116.4(a)(2)(ii).

26. The evaluation criteria for the CAURD applications indicate that the address the justice involved individual lived at the time of their arrest *can* be evaluated: "(i) relative to areas with historically high rates of arrest, conviction, or incarceration for marihuana-related offenses; (ii) relative to areas with historically low median income; or (iii) was provided by a public housing authority in NYS or New York City." N.Y. COMP. CODES R. & REGS. tit. 9, § 116.4(c)(2).

27.     Neither the Cannabis Law, CAURD regulations nor guidance require or mention that (i) areas of high rates of arrests or (ii) areas with historically low median income be located in NYS.

28.     While the third criteria to which the applicant's address can be considered does reference NYS – "public housing authority in New York," that does not alter the substance of the factor being scored which was relative median household income. A public housing address, like NYS Public Housing, is *evidence* of low median income. Applicants from every state had an equal opportunity to demonstrate they were from a low median income neighborhood. The application provided an applicant the option to indicate that they lived in any "public housing authority recognized by the United States Department of Housing and Urban Development" at the time of their arrest or conviction.

29.     The Agency compiled information regarding low median household income for all states, including NYS, from the same sources, the Census and American Community Surveys. Such data is used to evaluate whether any given area had historically low median incomes. This data covers *all* states and territories of the United States.

30.     As to the first criteria "areas with historically high rates of arrest, conviction, or incarceration for marihuana-related offenses", the data needed to identify such areas is not currently available for all states equally (including NYS) and will therefore not be used for CAURD application evaluations.

31.     Thus, the scoring metrics relative to low median income or evidence of low median income such as residence in public housing apply to all applicants equally, regardless of their state of residence. Plaintiff's allegation that it *believes* that OCM will score an applicant

9

higher if the justice involved individual was a NYS resident at the time of the justice involved individual's arrest or conviction (Dk. 1 at ¶ 16.), and that it will score higher if the justice involved individual's residence was in high arrest rate area and low median income in NYS (Dkt. 1 at ¶ 19.) is pure speculation. A justice involved individual from a state other than NYS who resided in an area with a historically low median income would be scored *exactly the same* as a justice involved NYS resident from a low median income neighborhood.

32. Public comment period for the CAURD Regulations opened on March 30, 2022 and closed on May 31, 2022. Neither Plaintiff nor any individual identified on the Application submitted a comment to the CAURD Regulations with respect to any of the above requirements laid out in the CAURD Regulations.

Plaintiff's CAURD Applications

33. The deadline for submitting applications was Monday, September 26, 2022.

34. Plaintiff submitted an application for a CAURD license with the Agency which was assigned application number 540 (the "Application"). Attached as Exhibit "C" is a true and correct copy of the relevant pages/screens of the Application.

35. The Application indicates that Kenneth Gay is a 51% owner of Variscite, that he has sole control over the applicant, and that his address is in Michigan. See Exhibit "C".

36. The Application also indicates that Jeffrey Jensen is a 49% owner of Variscite, that he is the secretary and president of Variscite, and that his address is in California. See Exhibit "C".

37. The Application indicates that Mr. Jensen has a license in California to operate a retail dispensary. The Application also provides that Plaintiff has "partnered with existing

operators to act as the financial backer and management company for applications in other jurisdictions. Those partners included the largest licensed entities in California" (See Application, Management Agreement, attached as Exhibit "D"), and that Plaintiff "plan[s] to enter a management agreement with a large, established operator" (See Application, Succession Plan, attached as Exhibit "E").

38. As part of the Application, Plaintiff submitted a certificate of incorporation which indicates that Plaintiff is incorporated "under section 402 of the Business Corporation Law of the State of New York" and that "the county, within [New York state] in which the office of [Variscite] is to be located is Albany." See Exhibit "C".

39. The Application also indicates that Plaintiff "intend[s] to establish [vendor] relationships in New York." See Application, Vendor Agreement, attached as Exhibit "F".

40. The Plaintiff also checked the box indicating that it attested that it has significant presence (which would appear to be consistent with Plaintiff's assertions regarding its corporate organization, location and vendor relationships). See Exhibit "C" at p. 4; and Exhibit "G", which is a mock-up of the application which shows all questions on the application form and all possible answers that an applicant could select (the "Application Mock-Up"). See Exhibit "G" at p. 20.

41. The Agency has not requested at this point that Plaintiff submit any documentation regarding its attestation that it has significant presence.

42. The Application indicates that Plaintiff answered in the affirmative "Yes" to the question: "Has the above owner been convicted of a marihuana-related offense in New York State before March 31, 2021, or are they the parent, spouse, child, guardian, or dependent of

someone who has been convicted of a marihuana-related offense in New York State before March 31, 2021?" See Exhibit "C" at p. 5.

43. Plaintiff's documents indicate that this answer was false.

44. Plaintiff indicated that the marihuana-related offense qualifying the Plaintiff to apply was "PL 221.30. Criminal Possession of Marihuana in the First Degree." See Exhibit "C" at p. 5.

45. Review of Plaintiff's documentation indicates that this answer was false.

46. The convicted individual's address at the time of conviction was not in an area with historically low median income. Plaintiff's score will not be sufficiently high to qualify for a CAURD license.

47. The two individuals identified on the Application submitted by Plaintiff, Mr. Jensen and Mr. Gay, submitted another application (the "Second Application"), which was assigned number 753 for identification purposes. Attached as Exhibit "H" is a true and correct copy of the relevant pages/ screens of the Second Application.

48. The Second Application is filed by Variscite NY Two, Inc ("Variscite II"). See Exhibit "H".

49. The Second Application identifies Mr. Jensen as 49% owner of Variscite II (same as his ownership of the Plaintiff); Mr. Gay as 11% owner (rather than 51% that he owns in Plaintiff); and Scott Lambert as 40% owner. See Exhibit "H".

50. Mr. Lambert's address is in California as is Mr. Jensen's. See Exhibit "H".

51.	Similar to the Plaintiff's Application, the Second Application similarly indicates that Mr. Jensen and others are associated with licenses in California to operate a retail dispensary, and also to manufacture and distribute cannabis. Similar to the Application, the Second Application provides that the applicant has "partnered with existing operators to act as the financial backer and management company for applications in other jurisdictions. Those partners included the largest licensed entities in California" (See Second Application, Management Agreement, at Exhibit "I"), and that applicant "plan[s] to enter a management agreement with a large, established operator" (See Second Application, Succession Plan, at Exhibit "J").

52.	There was also a third application that appears to be related with certain of the individuals identified on the Plaintiff's Application and the Second Application, and this application is assigned number 794. Attached as Exhibit "K" is a true and correct copy of the relevant pages/screens of the Third Application.

53.	The Third Application was filed by NDICA Green LLC. See Exhibit "K".

54.	The Third Application indicates that NDCIA Green LLC is affiliated with a nonprofit entity, and that Mr. Scott Lambert (an owner on the Second Application) is a board member of the nonprofit entity. In addition, the bylaws submitted for NDCIA Green LLC attach a member agreement which is titled "LLC MemberS' Agreement Variscite NY Two, Inc.," and references Mr. Jensen (an owner on the Application and Second Application) throughout the document.[1] See Exhibit "K".

---

1 Based on the Complaint (FN1 and Prayer for Relief), the Plaintiff does not appear to be challenging nor seeking to enjoin the review and licensing of this Third Application as that application is subject to the requirements for nonprofit entities.

13

CAURD Application Review and Selection

55. The Agency began the process of reviewing the fully compiled applications submitted, which total over 900. This requires not only reviewing answers to questions that can be answered in the affirmative or negative on application screens but also reviewing documents that had been submitted in support of such binary answers and questions.

56. At no point to date has the Agency issued any correspondence or guidance to Plaintiff indicating that Plaintiff's circumstances would result in the Plaintiff not meeting the definition of applicant or significant presence.

57. At no point to date has the Agency requested that Plaintiff submit documentation to support its attestation on the Application that it has significant presence.

58. The Agency has not received any calls or any other correspondence from the Plaintiff or any person identified on the Application seeking clarification regarding whether any requirements or criteria require an applicant to be a NYS resident.

59. Plaintiff admits that however it interpreted the significant presence requirements of the CAURD program, it in fact met those requirements by organizing as an entity under NYS law and by checking the attestation regarding significant presence.

60. There will be additional retail license applications issued by the Agency. Indeed, the Agency is drafting regulations for all other adult use licenses, including retail licenses. As such, Plaintiff may not be excluded from the cannabis market.

Injunctive Effect on the State

61.     Pursuant to a legislative enactment in February of this year, NYS was required to license 261 cultivators and 25 processors.

62.     Each of the cultivators have one acre of capacity and have already produced a combined estimate of 300,000 pounds of cannabis, with a total production value of up to $1.5 billion. If the cultivators have nowhere to sell their crop, they will likely lose their businesses or will otherwise be forced to sell their crops on the illicit market.

63.     The CAURD licensees are intended to displace hundreds of illegal stores that have risen to take advantage of the absence of legal supply since decriminalization. Furthermore, NYS is already faced with an illicit market growing and thriving since the passage of the MRTA, with unlicensed businesses posing as licensed businesses. The Agency has already issued cease and desist letters to a number of violators selling cannabis without a license. Attached as Exhibit "L" is a true and correct copy of the announcement regarding the Agency's enforcement actions and cease and desist letters (the "Enforcement Actions").

64.     The injunction of the targeted, state controlled, state financed, and state directed legal supply chain would flood the illegal market with hundreds of thousand of pounds of untested and untaxed cannabis fueling more illicit activities, entrenching the criminal stores, driving down prices, and harming public health and safety. The State of New York cannot have a more compelling interest than to regulate such an important social experiment with such potentially devasting impact on health and safety.

Dated: October 21, 2022
New York, New York

*/s/ Herb Barbot*
Herb Barbot

1