**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**VARISCITE NY ONE, INC.,**

                 **Plaintiff,**

        **v.**

**STATE OF NEW YORK et al.,**

                **Defendants.**
_____

|  |  |
|---|---|
| **1:22-cv-1013** | |
| **(GLS/DJS)** | |

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Kernkamp Law, APC | CHRISTIAN KERNKAMP, ESQ. |
| 1801 Century Park East, 24th Floor | |
| Los Angeles, CA 90067 | |
| | |
| E. Stewart Jones Hacker Murphy, LLP | THOMAS J. HIGGS, ESQ. |
| 28 Second Street - Suite 203 | |
| Troy, NY 12180 | |
| | |
| **FOR THE DEFENDANTS:** | |
| HON. LETITIA JAMES | MATTHEW GALLAGHER |
| New York State Attorney General | AMANDA K. KURYLUK |
| The Capitol | Assistant Attorneys General |
| Albany, NY 12224 | |

**Gary L. Sharpe**
**Senior District Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

### I. <u>Introduction</u>

Plaintiff Variscite NY One, Inc. commenced this action on September

26, 2022 against the State of New York, the New York State Office of Cannabis Management (OCM), and the Executive Officer of OCM, Christopher Alexander, pursuant to 42 U.S.C. § 1983, alleging a violation of the dormant Commerce Clause.  (Compl., Dkt. No. 1.)  Now pending is Variscite's motion for a preliminary injunction, which seeks an order "restrain[ing defendants] from issuing any cannabis licenses under the [conditional adult-use retail dispensary (CAURD)] application program held from August 25 to September 26, 2022, for the following geographic areas: Finger Lakes; Central New York; Western New York; Mid-Hudson; and [Brooklyn]."  (Dkt. No. 6 at 2; *see* Dkt. No. 21 at 4 n.2.[1])  For the reasons that follow, Variscite's motion is granted.[2]

## II. Background

## A. Facts

[1]  Varisicite "erroneously include[d] Manhattan and omit[ted] Brooklyn in the five geographic areas" for which it is seeking an injunction in its initial proposed order.  (Dkt. No. 21 at 4 n.2.)

[2]  Variscite additionally requests the court take judicial notice of certain documents submitted in connection with their motion for a preliminary injunction.  (Dkt. No. 21, Attach. 1; Dkt. No. 27.)  Because those documents need not be considered by the court in connection with the disposition of the motion as discussed below, the court declines to take judicial notice of them.

On March 31, 2021, New York enacted the Marihuana Regulation & Taxation Act, with the short title of "Cannabis Law."  N.Y. CANBS. § 1. Under the Cannabis Law, a person or entity may be an "applicant" for a cannabis license if that applicant has "a significant presence in New York state, either individually or by having a principal corporate location in the state; is incorporated or otherwise organized under the laws of this state; or a majority of the ownership are residents of this state."  NY CANBS § 3. Additionally, pursuant to the Cannabis Law, OCM has the power "[t]o prescribe the form of applications for [cannabis] licenses and permits under" the Cannabis Law.  N.Y. CANBS. § 11(4).

On August 3, 2022, OCM adopted part 116 of Chapter II of Subtitle B of Title 9 of the Official Compilation of Codes, Rules and Regulations of the State of New York (the "Cannabis Regulations"), which, in part, governs "CAURD licenses and the application process to acquire such licenses.  9 N.Y.C.R.R. § 116.1-.9.

Section 116.4(a) of the Cannabis Regulations, states:

> The following minimum requirements must be met to become an eligible applicant for [a CAURD] license:
>
> (1) an applicant must demonstrate:

3

(i) a significant presence in New York State, either individually or by having a principal corporate location in the state;

(ii) it is incorporated or otherwise organized under the laws of New York State; or

(iii) a majority of the ownership of the applicant are residents of New York State by being physically present in the state no less than 180 calendar days during the current year or 540 calendar days over the course of three years;

(2) if the applicant is an individual, or an entity with one or more individuals, at least one individual must:

(i) be justice involved, which means an individual that:

*(a)* was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one;

*(b)* had a parent, legal guardian, child, spouse, or dependent who was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one; or

*(c)* was a dependent of an individual who was convicted of a marihuana-related offense in New York State prior to the thirty-first of March two thousand twenty-one; and

(ii) provide evidence of the primary residence of the justice involved individual at the time of such individual's arrest or conviction; and

(iii) hold or have held, for a minimum of two

4

years, at least ten percent ownership interest in, and control of, a qualifying business, which means a business that had net profit for at least two of the years the business was in operation; or

(3) if the applicant is a nonprofit organization, or wholly owned and controlled by one, the nonprofit organization must:

(i) be recognized as an entity pursuant to section 501(c)(3) of the Internal Revenue Code; (ii) intentionally serve justice involved individuals and communities with historically high rates of arrest, conviction, incarceration or other indicators of law enforcement activity for marihuana-related offenses; (iii) operate and manage a social enterprise that had at least two years of positive net assets or profit as evidenced in the organization's tax returns; (iv) have a history of creating vocational opportunity for justice involved individuals; (v) have justice involved individual(s) on its board or as officers; and (vi) have at least five full time employees.

Additionally, § 116.4(b) provides the "[a]pplicant [o]wnership and

[c]ontrol [m]inimums" required to acquire a CAURD license, demanding:

(1) At least 51% or more of the applicant shall be owned, in the aggregate, by:

(i) at least one individual that satisfies the requirements for an eligible applicant set forth in sections 116.4(a)(1) and 116.4(a)(2) or entity

5

that satisfies the requirements for an eligible applicant set forth in sections 116.4(a)(1) and 116.4(a)(3) of this Part; and

(ii) any other additional individuals, if any, who are justice involved; and

(2) At least one individual that satisfies the requirements for an eligible applicant set forth in sections 116.4(a)(1) and 116.4(a)(2) or entity that satisfies the requirements for an eligible applicant set forth in sections 116.4(a)(1) and 116.4(a)(3) of this Part shall own at least 30% of the applicant and such individual or entity shall have sole control of the applicant or licensee.

Further, Section 116.4(c) outlines the CAURD application evaluation

criteria, stating:

An eligible applicant shall be evaluated based on any of the following criteria which shall be weighted as determined by the Office:

(1) if the applicant is an individual, or an entity with one or more individuals, whether the justice involved individual was themselves convicted of a marihuana-related offense as set forth in section 116.4(a)(2)(i)(a) of this Part;

(2) the justice involved individual's primary residence at the time of such individual's arrest or conviction:

(i) relative to areas with historically high rates of arrest, conviction, or incarceration for marihuana-related offenses;
(ii) relative to areas with historically low median income; or

6

>> (iii) was provided by a public housing authority in New York State or New York City; and

> (3) the qualifying business based on:

>> (i) the number of employees employed by the business;
>> (ii) the number of years the business has been in operation;
>> (iii) the profitability of the business;
>> (iv) type of business and whether the business was a retail business, or sold products or services directly to the end-consumer;
>> (v) whether the business had a physical location; or
>> (vi) whether the business received or resolved any violations, fines or fees assessed against the business by state or federal regulatory authorities; and
>> (4) any other factors as determined by the Office.

Finally, Section 116.4(d) provides:

> The office may create regional geographic zones for the scoring of [CAURD license] applicants. Applicants may be asked to rank a number of preferences of regional geographic zones to be considered for a license. For regional geographical zones where there are more applicants than available licenses, the Office may select from eligible applicants who indicated first preference for the given region based on weighted scoring of the evaluation criteria set out above. In the event there is a tie between two or more candidates or there are more applicants than available licenses after the evaluation criteria has been applied, the Office is authorized to

7

use a random selection process to identify the final
applicants to recommend to the Board for licensure.

OCM also published a document titled "Conditional Adult-Use Retail

Dispensary (CAURD) *Frequently Asked Questions*," in which it explained,

among other things, that "applicants are required to have a significant New

York State presence or to otherwise satisfy the definition of applicant in the

Cannabis Law and may be asked to submit documentation to prove such."

(Dkt. No. 6, Attach. 19 at 8.)  The document further elaborated:

"acceptable documentation [to prove a significant New York presence]

includes:" (1) "Proof of the individual with sole control's residency in New

York State"; (2) "Checking, savings, retirement, or brokerage statements

showing assets in New York State"; (3) "Tax filings showing assets,

accounts, or property in New York State"; (4) "Deeds, titles, mortgage

documents, or homeowner warranties showing property ownership in New

York State," or; (5) "Any other proof of New York State presence as

determined by the Office."  (*Id.* at 8-9.)

Defendants invited applications for CAURD licenses through a "New

York Business Express application website," and accepted applications

from August 25, 2022 until September 26, 2022.  (Compl. ¶ 22; *see* Dkt.

No. 6, Attach. 9.)  CAURD applicants were permitted to select up to five geographic regions of New York State for which their application would be considered, including: Brooklyn; Capital Region; Central New York; Finger Lakes; Long Island; Manhattan; Mid-Hudson; Mohawk Valley; North Country; Queens; Southern Tier; Staten Island; the Bronx; and Western New York.  (Compl. ¶ 30; *see* Dkt. No. 6, Attach. 15.)

Variscite applied for a CAURD license; however, because it "is [fifty-one percent] owned by an individual who has a cannabis conviction under Michigan law" and "has no significant connection to New York,"[3] Variscite is ineligible to be selected.  (Compl. ¶ 31.)  Variscite "satisfies all [other] requirements of the Cannabis Law and Cannabis Regulations to apply in the CUARD Application Program."  (*Id.* ¶¶ 31.)  As part of its application, Veriscite selected the Finger Lakes; Central New York; Western New York; Mid-Hudson; and Brooklyn as the areas for which its application would be

_____

[3]  Because Variscite "is a corporation organized under the laws of the State of New York," (Compl. ¶ 1), it appears that it would qualify as having a significant New York State presence under Section 116.4(a)(1)(ii) of the Cannabis Regulations; however, the CAURD application website requires "[t]he business principal with sole control over the CAURD applicant [to] have [a] significant presence in New York State to be eligible for a CAURD license," and in order to proceed with the application process, (Dkt. No. 6, Attach. 10), a requirement that Variscite's business principal does not meet, (Compl. ¶ 31).

considered.  (*Id.* ¶ 33.)

**B.    Procedural History**

Variscite filed its complaint on September 26, 2022.  (Compl.)
Shortly thereafter, on October 4, 2022, Variscite moved for a temporary
restraining order (TRO) and preliminary injunction by order to show cause.
(Dkt. No. 6.)  Because "the [TRO and preliminary injunction] motion papers
were not provided [to defendants], and . . . , instead, [Variscite] gave notice
only that a motion was filed," the court treated the motion as "a TRO
without notice."  (Dkt. No. 9.)  Accordingly, because Variscite "ha[d] not
satisfied the court that the strict requirements of Rule 65(b) [of the Federal
Rules of Civil Procedure] ha[d] been met," the court denied the application
for a TRO and set a briefing schedule and motion return regarding the
preliminary injunction.  (Dkt. No. 9.)  The parties then requested a modified
briefing schedule, (Dkt. No. 12), which was granted, (Dkt. No. 13).  The
court held an oral return by video on Variscite's motion for a preliminary
injunction on November 11, 2022 and reserved its ruling.[4]

---

[4]  At the November 11, 2022 hearing, the court granted Verisite's request to supplement the record, which it did following the hearing.  (Dkt. No. 27.)

On November 2, 2022, after the pending preliminary injunction

motion was fully briefed, defendants moved to dismiss, (Dkt. No. 22),

raising many of the same arguments they made in their opposition to

Variscite's preliminary injunction motion, (Dkt. No. 20, Attach. 1), which will

be discussed below, as well as new arguments regarding standing, and

Eleventh Amendment immunity, (Dkt. No. 22, Attach. 1).  The standing and

Eleventh Amendment arguments *were not* made in connection with

defendants' response to Variscite's preliminary injunction motion nor were

they raised by defendants during the motion return, and the motion to

dismiss is not yet fully briefed.

## III.  Standard of Review

When seeking a preliminary injunction, a plaintiff must show:

> (1) a likelihood of success on the merits or . . .
> sufficiently serious questions going to the merits to
> make them a fair ground for litigation and a balance
> of hardships tipping decidedly in the plaintiff's favor;
> (2) a likelihood of irreparable injury in the absence of
> an injunction; (3) that the balance of hardships tips in
> the plaintiff[s]'[] favor; and (4) that the public interest
> would not be disserved by the issuance of an
> injunction."

*Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir.

2015) (internal quotation marks and citation omitted).  "[A] party need not

11

show as high a likelihood of success if it can demonstrate that the balance of hardships tips decidedly in its favor."  *N.Y. Life Ins. Co. v. Singh*, No. 14CV5726NGSMG, 2017 WL 10187669, at *1 (E.D.N.Y. July 13, 2017) (citation omitted).

To obtain an injunction that "alter[s] the status quo by commanding some positive act," sometimes referred to as a "mandatory" injunction, the applicant must show "a clear or substantial likelihood of success on the merits," rather than simply a likelihood of success on the merits.  *See N.Y. Civil Liberties Union v. N.Y.C. Trans. Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).

## IV.  Discussion

## A.    The Injunctive Relief Sought

As a preliminary matter, the court must determine which standard of review applies to the injunction sought.  Variscite argues that it requests a "prohibitory" injunction which only "preserves the status quo."  (Dkt. No. 21 at 2.)  Defendants contend that the injunction sought by Variscite is "mandatory," or "one that "alter[s] the status quo by commanding some positive act."  (Dkt. No. 20, Attach. 13 at 4.)

As mentioned above, a "mandatory" injunction that "alter[s] the status

12

quo by commanding some positive act," requires a showing of "a clear or substantial likelihood of success on the merits."  *See N.Y. Civil Liberties Union*, 684 F.3d at 294.  "Prohibitory injunctions [that] maintain the status quo pending resolution of the case" require a showing of "a likelihood of success on the merits."  *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36-37 (2d Cir. 2018).

Veriscite seeks a preliminary injunction "restrain[ing defendants] from issuing any cannabis licenses under the CAURD application program" in certain geographic areas.  (Dkt. No. 6 at 2; *see* Dkt. No. 21 at 4 n.2.)  Given the relief sought, and the fact that the licensing process has not begun[5] — and according to representations made by defendants' counsel during the motion return, will not begin until, at the earliest, November 21, 2022 — Variscite seeks a "prohibitory injunction," or, rather, one that "seeks only to maintain the *status quo,*" and, thus, it need only show a likelihood of success on the merits.  *See Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006) (finding that a requested injunction preventing the enforcement of a street vending licensing scheme against

---

[5]  Even if the licensing process had begun sometime after the filing of Variscite's complaint, the injunction would still be classified as prohibitory.  *See N. Am. Soccer League*, 883 F.3d at 37 n.5.

certain art vendors was prohibitory, because the injunction would preserve, rather than alter, the status quo).  Defendants' argument that the injunction sought is mandatory or status quo-altering is unpersuasive, as they have provided no justification for their position.  (*See, e.g.*, Dkt. No. 20, Attach. 13.)  Accordingly, Variscite must show only a likelihood of success on the merits, rather than a clear or substantial likelihood of success.[6]

## B.   Likelihood of Success on the Merits

### 1.    *Dormant Commerce Cause Scrutiny*

The Commerce Clause of the Constitution provides that "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States."  U.S. Const. art. I, § 8, cl. 3.  "Although the [Commerce] Clause is framed as a positive grant of power to Congress, [the Supreme Court] ha[s] long held that this Clause also prohibits state laws that unduly restrict interstate commerce."  *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019) (internal quotation marks and citation omitted).  "This 'negative' aspect of the Commerce Clause prevents the

---

[6] While Varisicte need only demonstrate a likelihood of success on the merits, the court notes that Veriscite has also demonstrated a clear likelihood of success on the merits and, thus, would satisfy the standard for a mandatory injunction for the same reasons that it has shown a likelihood of success.

States from adopting protectionist measures and thus preserves a national market for goods and services." *Id.* (internal quotation marks and citation omitted). This interpretation is known as "the dormant Commerce Clause." *Id.*

Here, in order to determine the likelihood of Variscite's success on the merits, the court must determine what level of dormant Commerce Clause scrutiny applies. Variscite argues that the first, more demanding, level of scrutiny applies because the Cannabis Law and Cannabis Regulations "directly discriminate against interstate commerce." (Dkt. No. 6, Attach. 3 at 8-9.) Defendants contend that the second, less demanding, level of scrutiny applies. (Dkt. No. 20, Attach. 13 at 4-5.) The court agrees with Veriscite.

"In analyzing a challenged local law under the dormant Commerce Clause, [the court must] . . . determine whether it clearly discriminates against interstate commerce in favor of intrastate commerce, or whether it regulates evenhandedly with only incidental effects on interstate commerce." *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 47 (2d Cir. 2007) (citation omitted); *see United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 261 F.3d 245, 255 (2d Cir.

15

2001) ("Once a court determines that a state regulation affects interstate commerce, it must next determine whether the regulation 'discriminates against interstate commerce' or regulates even-handedly with incidental effects on interstate commerce." (quoting *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 390 (1994)).

"[I]f a state law discriminates against out-of-state goods or nonresident economic actors, the law can be sustained only on a showing that it is narrowly tailored to advanc[e] a legitimate local purpose." *Tenn. Wine & Spirits*, 139 S. Ct. at 2461 (internal quotation marks and citation omitted); *see Town of Southold*, 477 F.3d at 47 ("A law that clearly discriminates against interstate commerce in favor of intrastate commerce is virtually invalid *per se*.").  "The term discrimination in this context 'means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Town of Southold*, 477 F.3d at 47 (quoting *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994)).  "A clearly discriminatory law may operate in three ways: (1) by discriminating against interstate commerce on its face; (2) by harboring a discriminatory purpose; or (3) by discriminating in its effect." *Id.* (citations omitted); *see Vizio, Inc. v. Klee*, No. 3:15-cv-00929, 2016 WL 1305116, at

16

*6 (D. Conn. Mar. 31, 2016) (citation omitted).

On the other hand, where a law does not clearly discriminate, and "only incidentally burdens interstate commerce [it] is subject to [a] more permissive balancing test . . .  and will be struck down if the burden imposed on interstate commerce clearly exceeds the putative local gains." *Town of Southold*, 477 F.3d at 47; *see Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) ("Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.").

Numerous District Courts have ruled on similar regulatory cannabis licencing schemes, and all applied the heightened level of dormant Commence Clause scrutiny.  *See NPG, LLC v. City of Portland*, No. 2:20-CV-00208, 2020 WL 4741913, at *2 (D. Me. Aug. 14, 2020) (applying heightened standard to a licencing scheme where applications were evaluated on a point scale, with the maximum potential points being thirty-four, with five points awarded if the applicant was "[a]t least [fifty-one percent] owned by individual(s) who ha[d] been a Maine resident for at

17

least five years," and with four points awarded to applicants "[o]wned by individual(s) who have previously been licensed by the State of Maine or a Maine municipality for non-marijuana related business")*; see also Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, 554 F. Supp. 3d 177, 180 (D. Me. 2021) *aff'd by* 45 F.4th 542 (1st Cir. 2022); *Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985, 989 (W.D. Mo. 2021); *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 807-08 (E.D. Mich. 2021); *Finch v. Treto*, No. 22 C 1508, 2022 WL 2073572, at *12 (N.D. Ill. June 9, 2022).

Here, the challenged law and regulations require the CAURD applicant to demonstrate "a significant presence in New York State," a showing that can be met by demonstrating "a majority of the ownership of the applicant are residents of New York State."  9 N.Y.C.R.R. § 116.4(a). Applicants may also meet the "significant presence" criteria by demonstrating that it is "incorporated or otherwise organized under the laws of New York State," *id.*, or by providing documentation demonstrating: (1) "Proof of the individual with sole control's residency in New York State"; (2) "Checking, savings, retirement, or brokerage statements showing assets in New York State"; (3) "Tax filings showing assets, accounts, or property in New York State"; (4) "Deeds, titles, mortgage documents, or

homeowner warranties showing property ownership in New York State," or;

(5) "Any other proof of New York State presence as determined by [OCM],"

(Dkt. No. 6, Attach. 19 at 8-9).  Additionally, and independent from the

"significant presence" requirement, an applicant must be "[a]t least [fifty-

one [percent] or more . . . owned, in the aggregate, by" justice involved

individuals, meaning, "convicted of a marihuana-related offense *in New

York State*."  9 N.Y.C.R.R. § 116.4(a)-(b) (emphasis added).  Finally, the

applicant must provide proof of the justice involved individual's residence at

the time of his or her arrest or conviction, and the application evaluation

criteria includes whether the justice involved individual lived-in housing

provided by New York Public Housing Authority.  *See id.* § 116.4(a), (c).

Accordingly, the aforementioned application requirements, especially

when considered in the aggregate, will have a discriminatory effect on out-

of-state residents seeking a CAURD license, and, thus, the heighten level

of dormant commerce clause should be applied.  *See Town of Southold*,

477 F.3d at 47; *see also NPG, LLC*, 2020 WL 4741913, at *2.

> 2. *Whether the Challenged Laws and Regulations Survive Heightened Dormant Commerce Clause Scrutiny*

Variscite argues that the challenged law and regulation are not

sufficiently narrowly tailored because a "nondiscriminatory method could address the supposed collateral consequences of cannabis criminalization . . . , for example, [defendants] could . . . create job training programs (which would benefit entire communities, rather than the discriminatory CAURD Program that benefits just 150 applicants." (Dkt. No. 21 at 2.) In their briefing, defendants did not address whether the challenged law and regulations could survive heightened scrutiny. (*See generally* Dkt. No. 20, Attach. 13.) The court agrees with Veriscite.

As mentioned above, a challenged law can survive the heightened level of dormant Commerce Clause scrutiny "only on a showing that it is narrowly tailored to advanc[e] a legitimate local purpose." *Tenn. Wine & Spirits*, 139 S. Ct. at 2461 (internal quotation marks and citation omitted). If the heightened standard applies to a challenged law, the law is "virtually invalid per se," *see Town of Southold*, 477 F.3d at 47; *see also NPG, LLC*, 2020 WL 4741913, at *11 ("State laws that discriminate against interstate commerce face a virtually *per se* rule of invalidity." (internal quotation marks and citation omitted)), and courts "generally str[ike] down the statute without further inquiry," *Tennessee Wine & Spirits*, 139 S. Ct. at 2471. The burden of demonstrating that the challenged law survives the heightened

level of dormant Commerce Clause scrutiny rests on the defendants.  *See*

*Lowe*, 544 F. Supp. 3d at 816 (citing *Dep't of Revenue of Ky. v. Davis*, 553

U.S. 328, 338 (2008)).

The intent of the Cannabis Law is:

> [T]o regulate, control, and tax marihuana, heretofore known as cannabis, generate significant new revenue, make substantial investments in communities and people most impacted by cannabis criminalization to address the collateral consequences of such criminalization, prevent access to cannabis by those under the age of twenty-one years, reduce the illegal drug market and reduce violent crime, reduce participation of otherwise law-abiding citizens in the illicit market, end the racially disparate impact of existing cannabis laws, create new industries, protect the environment, improve the state's resiliency to climate change, protect the public health, safety and welfare of the people of the state, increase employment and strengthen New York's agriculture sector.

N.Y. CANBS. § 2.

As mentioned above, defendants did not even attempt to make the

requisite "showing that [the challenged laws and regulations are] narrowly

tailored to advanc[e] a legitimate local purpose," *Tenn. Wine & Spirits*, 139

S. Ct. at 2461 (internal quotation marks and citation omitted), in their

briefing.  (*See* Dkt. No. 20, Attach. 13.)  Additionally, when directly

questioned by the court as to whether the challenged laws and regulations could survive the heightened level of scrutiny during the motion return, defendants offered no cogent response.  Defendants have not met their burden of demonstrating that the Cannabis Law and Cannabis Regulations are sufficiently "narrowly tailored" to serve a legitimate local purpose.  *See Lowe*, 544 F. Supp. 3d at 816.  Therefore, Variscite is likely to succeed on

the merits of their claim.[7]

## C.   <u>Irreparable Harm</u>

Variscite argues that it will be irreparably harmed, absent an injunction, because the challenged laws and regulations infringe on its constitutional rights, which automatically qualifies as irreparable harm, it

---

[7]   Defendants' argument that, "even if the [c]ourt were to find that the program favors intrastate commerce, there is still no violation of the [dormant] [C]ommerce [C]lause because of the market participant exception," (Dkt. No. 20, Attach. 13 at 10), does not change this outcome. The market participant "doctrine 'differentiates between a State's acting in its distinctive governmental capacity, and a State's acting in the more general capacity of a market participant[, with] only the former [being] subject[ed] to the limitations of the [dormant] Commerce Clause.'" *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 93 (2d Cir. 2009) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 277 (1988)).  In making a determination regarding the market participant exception, "a court . . . must consider in each specific context if the government is acting like a private business or a governmental entity."  *Id.*  Although defendants argue that "[t]he CAURD program is a selective, turnkey program targeted to provide a limited number of entrepreneurs with leased premises and loans to operate their dispensary," (Dkt. No. 20, Attach. 13 at 10-11), it is readily apparent that the State is acting as "a governmental entity" rather than "a private business" because it appears the State is providing loans and leases as a way of assisting those to which it grants a licence, rather than profiting from the licensees, which is consistent with the stated purpose of the Cannabis Law: to "make substantial investments in communities and people most impacted by cannabis criminalization to address the collateral consequences of such criminalization."  N.Y. CANBS. § 2.

will "be[] excluded from the New York storefront retail cannabis market,"
and, even if it could join the cannabis market at a later date, "[a]ll
advantages to early entrants in the market, such as access to customers
who have not developed loyalty to other business, will have been claimed."
(Dkt. No. 6, Attach. 3 at 11-13.)  Defendants argue that constitutional injury
alone is insufficient to constitute irreparable injury, "[u]pon review of
[Variscite]'s application . . . it is apparent that due to the high level of
household income for the area in which [Variscite]'s address is located at
the time of conviction (which is based on the same data for all states),
[Variscite] is unable to obtain a sufficiently high score to qualify for [a]
license[]," any business loss can be compensated with monetary damages,
Variscite may apply for a future license which "[OCM] is currently finalizing
regulations for," and Variscite's "claim of irreparable harm is remote,
speculative, and tenuous at best as [OCM] has not made a determination
on [its] [a]pplication."  (Dkt. No. 20, Attach. 13 at 11-13.)  The court agrees
with Veriscite.

        "Irreparable harm is that injury which is so serious that a monetary
award cannot adequately compensate the injured party." *325 Bleecker,
Inc. v. Local Union No. 747*, 500 F. Supp. 2d 110, 123-24 (N.D.N.Y. 2007)

(citing *Citibank N.A. v. Citytrust*, 756 F.2d 273, 275 (2d Cir.1985)).

Additionally, such harm cannot be merely remote or speculative.  *See id.*

(citing *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.

1990)).

     "In the Second Circuit, it is well-settled that an alleged constitutional

violation constitutes irreparable harm."  *Martinez-Brooks v. Easter*, 459 F.

Supp. 3d 411, 448 (D. Conn. May 12, 2020) (citations omitted); *see Conn.*

*Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("[W]e

have held that the alleged violation of a constitutional right triggers a

finding of irreparable injury." (internal quotation marks and citations

omitted)); *but see Andre-Rodney v. Hochul*, 569 F. Supp. 3d 128, 141-42

(N.D.N.Y. Nov. 2021) (stating that "[a] court will presume that a plaintiff has

established irreparable harm . . . if the claim involves the alleged

deprivation of a constitutional right," but the plaintiff must also

"convincingly" show that "the constitutional deprivation . . . carries

noncompensable damages" (citations omitted)).

     Because Variscite alleges harm of a constitutional nature, such harm

is deemed irreparable.  *See Conn. Dep't of Envtl. Prot.*, 356 F.3d at 231.

Variscite has also demonstrated, beyond the fact that the harm is of a

constitutional dimension, that it faces irreparable financial harm should

their CAURD application be denied, due to their risk of being excluded, to

some degree, from the market.  *See Lowe*, 544 F. Supp. 3d at 816

("[P]laintiff has demonstrated that she will suffer irreparable injury absent

an injunction, as she would, at best, be significantly disadvantaged in

applying for a recreational marijuana retail license . . . and, at worst, be

entirely eliminated from consideration for such a license."); *see also Finch*,

2022 WL 2073572, at *16 ("If the court declined to grant injunctive relief as

to the [cannabis licensing scheme] . . . [p]laintiffs' chances of obtaining

[such] licenses will be statistically narrowed.").  Accordingly, Variscite has

demonstrated irreparable harm.

**D.   Balancing Hardships**

Variscite argues that the balance of hardships tips in its favor

because there have been no applications granted or denied yet, and

"[a]pplicants were not required to lease or purchase a property for their

business before the CAURD Application Program, and, in fact, the State

will require selected applicants to lease their business premises from

[d]efendants."  (Dkt. No. 6, Attach. 3 at 13.)  Defendants contend that the

balance of hardships is in their favor, because "[n]either [Variscite] nor any

26

of the individuals identified on [its] [a]pplication, nor their counsel, submitted a public comment on behalf of [Variscite] in response to the publication of the CAURD Regulations in March of this year regarding the provisions [it] challenge[s] as favoring intrastate commerce," the State has already licensed two hundred and sixty-one cannabis cultivators who have already grown cannabis, which would now face spoilation or diversion into the illicit market if an injunction is ordered, and delaying the enactment of the Cannabis Law and Cannabis Regulations will allow the illicit market to continue to thrive.  (Dkt. No. 20, Attach. 13 at 13-15).  The court agrees with Veriscite.

"[T]he balance of hardships inquiry asks which of the two parties would suffer most grievously if the preliminary injunction motion were wrongly decided." *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435, 444 (S.D.N.Y. 2013) (citation omitted).

The balance here tips in favor of Variscite, given that OCM has not begun issuing licenses, and will not begin issuing licenses until, at the earliest, November 21, 2022.  Additionally, all of defendants' arguments are undercut, to some degree, by the fact that Variscite only seeks to enjoin the application process in five of the thirteen geographical regions,

(Dkt. No. 6 at 2), and defendants could proceed with the licensing process in the other eight regions.  *See NPG, LLC*, 2020 WL 4741913, *12 (finding that the balance of hardships tipped in favor of the plaintiff seeking to enjoin a cannabis regulatory scheme, in part, because the defendant could move forward with granting licenses to some degree).

## E.   Public Interest

The final factor, whether the public interest will be served by granting the injunction, also weighs in Variscite's favor, as "[n]o public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal."  *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020); *see Lowe*, 544 F. Supp. 3d at 816 ("[T]he public interest is best served by enjoining the enforcement of an ordinance that is likely unconstitutional.").  Accordingly, Veriscite has met the standard for the issuance of a preliminary injunction, and the court grants its motion.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Variscite's motion for a preliminary injunction (Dkt. No. 6) is **GRANTED**; and it is further

**ORDERED** that defendants are hereby **ENJOINED** from issuing any cannabis licenses under the CAURD application program held from August 25, 2022 to September 26, 2022, for the following geographic areas: Finger Lakes; Central New York; Western New York; Mid-Hudson; and Brooklyn during the pendency of this action or until otherwise ordered by the court; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 10, 2022
Albany, New York

Gary L. Sharpe
U.S. District Judge