UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

VARISCITE NY ONE, INC.,

                                                *Plaintiff*,

-against-

STATE OF NEW YORK; NEW YORK STATE OFFICE
OF CANNABIS MANAGEMENT; AND CHRISTOPHER
ALEXANDER,

                                                *Defendants*.

**SUPPLEMENTAL DECLARATION**

22-CV-1013

GLS/DJS

---

    Herb Barbot, on the date noted below and pursuant to § 1746 of Title 28 of the United States Code, declares the following to be true and correct under penalty of perjury under the laws of the United States of America:

    1.    I am currently employed by the New York State ("NYS") Office of Cannabis Management ("OCM") and my current position is Director of Operations. In this current position, my duties and responsibilities include, but are not limited to overseeing the licensing unit and all licensing activities such as: the intake and processing of license applications; the review of license applications for eligibility consistent with applicable statutes and regulations; the background investigations conducted on all applicants and the parties involved with such applicants; and final recommendation on issuance or denial of a license.

    2.    During the hearing on Plaintiff's request for a preliminary injunction, the Court inquired about the status of OCM's review of applications and the regional impact of a potential

injunction on the issuance of licenses. I submit this Supplemental Declaration in response to the Court's inquiries and in support of Defendants' motion to modify the preliminary injunction contained in the Court's November 10, 2022 Decision and Order. Defendants request that the order enjoining Defendants from issuing conditional adult use retail dispensary ("CAURD") licenses in five geographic regions of the State be narrowed to Plaintiff's first preferred region only.

3.      In its motion for a preliminary injunction, Plaintiff requested that the Court stay the issuance of licenses in all five regions identified by Plaintiff in its application, namely Plaintiff's first preferred Finger Lakes region, second preferred Central New York region, third preferred Western New York region, fourth preferred Mid-Hudson region, and fifth preferred Brooklyn region. ECF No. 6-2 (Complaint), p. 9-10; ECF No. 6-3, p.15 (Plaintiff Memorandum of Law); ECF No. 20-3, p. 11 (Plaintiff's Application Summary).

4.      Because the geographic scope of the preliminary injunction covers a significant number of license applicants, it stands to cause significantly more harm than necessary to protect Plaintiff's rights during the pendency of the action.

5.      As is explained in the application completed and submitted by Plaintiff and included in the record in this case, the *only* instance in which OCM will consider *any* geographic region other than the applicant's first choice is where there are insufficient applications for the number of licenses available in that region: "Applicants will be considered for their 'Preference 1' region. Applicants will *only be considered for their 'Preference 2' region* where there are more available licenses in a region than the number of applicants who have ranked such region as their first preference." ECF No. 6-15 (emphasis added).

2

6. OCM has received 903 applications for the 150 licenses available under the CAURD program. Since the November 9, 2022 hearing, OCM has continued to review in detail all the submitted applications, including supporting documentation therefor, and can now confirm that the number of applicants for each region, including the five enjoined regions, is greater than the available licenses therein. OCM has received 43 applications listing the Finger Lakes region as a first preference, for which there are only 9 license available. OCM has received 21 applications listing the Central New York region as a first preference, for which there are only 7 licenses available. OCM has received 52 applications listing Western New York as a first preference, for which there are only 11 licenses available. OCM has received 75 applications listing the Mid-Hudson region as a first preference, for which there are only 17 licenses available. And OCM has received 110 applications listing Brooklyn as a first preference, for which there are only 19 licenses available.

7. Given that the number of applicants who have ranked each region as their first preference *significantly* outnumbers available licenses in each of the 14 regions, *under no circumstances will regions other than Plaintiff's first choice be considered when reviewing Plaintiff's application*. Independently of whether Plaintiff is successful on its constitutional claim, OCM can only score Plaintiff's application (as well as all other applications) for the first region selected.

8. As such, given the basis of the Court's preliminary injunction, the only region where Plaintiff could conceivably suffer damages is their first preference region, namely the Finger Lakes. No other region should continue to be enjoined.

9. The inclusion of the additional four regions currently enjoined under the preliminary injunction—namely Central New York, Western New York, Mid-Hudson and Brooklyn—will cause unnecessary, and in some cases likely irreparable, harm to prospective CAURD dispensaries, current cultivators and manufacturers in the program, landlords, goods and services providers, consumers, and the State.

10. The State's CAURD program only makes available 150 retail dispensaries across the State. By unnecessarily including the four additional regions in the injunction, an additional 54 of those retail dispensaries will be unable to open, depriving 54 applicants of the ability to open their businesses, hire employees, and sell legal, tested, and taxed cannabis products. Most importantly, the inability of the 54 dispensaries to carry product will significantly impact the ability of licensed cultivators and processors to sell their recently harvested crops.

11. OCM has licensed 262 adult-use conditional cultivators ("AUCC") to grow cannabis over the summer, resulting in a recently harvested crop estimated to be worth $1.5 billion. Of those cultivators, almost half, 121, are located in the 4 additionally enjoined regions. Based on my familiarity with the economics of cannabis cultivation in New York and the types of businesses that OCM has already licensed under the AUCC program, I can affirm that the vast majority of these cultivators are small family farms that have invested significant savings in growing this new crop. Their inability to get their harvest to market could significantly impact their financial solvency. Many are manufacturing their own products to sell directly to retail dispensaries.

12. OCM has also licensed 25 adult-use conditional processors ("AUCP"), or manufacturers, to make cannabis products from the crop harvested by the cultivators. Based on

4

my familiarity with the economics of cannabis processing in New York and the businesses that OCM has already licensed under the AUCP program, I can affirm that many of these processors have spent hundreds of thousands if not millions of dollars building out facilities and hiring employees. Of those processors, 16 are located in the 4 additionally enjoined regions.

13. In order the sell their product, the 121 cultivators and 16 processors in the additionally enjoined regions would be foreclosed from important consumer markets such as Buffalo and Syracuse in proximity to their operations, and would need to travel much greater distances to reach available retail dispensaries. This will entail significant additional costs, such the costs of wages for drivers, fuel, and tolls; these burdens will in turn strain operations and cut into profits. For example, a farmer in Western New York will need to travel approximately three hours to the closest dispensary, and another hour on top of that to reach a dispensary in a larger consumer market like Albany. And those dispensaries may not even be interested in purchasing products from farmers and processors in enjoined regions considering that they will have much quicker and more efficient access to supply from farmers in non-enjoined regions. Attached as Exhibit A is a map showing the enjoined regions in relation to the AUCCs (cultivators) and AUCPs (manufacturers/ processors).

14. In addition to retail dispensary owners, cultivators, and processors, up to 54 landlords in the additionally enjoined regions will be unable to fill vacant stores with the dispensaries planned for those regions. Over the past six months, the State has spent significant time and money negotiating with landlords across the state, including in the enjoined regions, to secure a lease for the CAURD dispensaries. There is a significant possibility that those efforts will go to waste if the additional four regions remain enjoined, and the landlords will needlessly

5

suffer lost profits. The four additionally enjoined reasons will also result in a serious loss of tax revenue and economic activity. All of these harms can be significantly mitigated by narrowing the injunction to the Finger Lakes region, without any injury to Plaintiff.

15. Finally, the millions of consumers of cannabis products residing in the four additionally enjoined regions will also be adversely affected by the scope of the injunction and the unavailability of safe, tested, legal product. According to market data and academic journals, legal stores being located too far away from where the consumer lives is a major factor in discouraging consumers from purchasing product from a licensed dispensary rather than from more convenient, illicit sources already established over the years in the market. *See, e.g.*, Goodman, S., Wadsworth, E., & Hammond, D. (2022). "Reasons for purchasing cannabis from illegal sources in legal markets: Findings among cannabis consumers in Canada and U.S. states, 2019–2020." Journal of Studies on Alcohol and Drugs, 83, 392–401.

16. Given that all applicants, including Plaintiff, can only be considered for their first-choice region, and that consequently the only region in which Plaintiff can sustain any injury is Finger Lakes, Defendants respectfully request that the Court narrow the injunctive relief granted to Plaintiff in order to have it apply exclusively to the Finger Lakes region pending resolution of this case.

17. The narrowing of the scope of the Court's injunction is further warranted by the fact that the review of applications for the Finger Lakes region further reveal that even in the Finger Lakes region Plaintiff cannot suffer damages as it cannot score high enough to obtain a license irrespective of the challenged factors. First, Defendants have confirmed that Plaintiff satisfies the significant presence factor as it is organized under the laws of New York. Second,

6

Plaintiff was granted full score for having a New Yok State conviction since Plaintiff's application improperly checked off that the justice involved individual applying did in fact have such a conviction -- even though Plaintiff uploaded evidence of a conviction from Michigan and not New York State. Despite having received full points for his conviction and having qualified as having significant presence in the State, the rest of Plaintiff's score put Plaintiff in the bottom quartile of applicants in the Finger Lakes region, making it impossible for Plaintiff to qualify for a license irrespective of its constitutional challenge.

18. The application scoring model for justice involved applicants consists of two sections. The first section, weighted at 55% of the overall applicant score, is based on the nature of the applicant's justice involvement. The second section, weighted at 45% of the overall applicant score, is based on the nature of the applicant's qualifying business. The answers to the scored questions in both sections are provided either on the application form itself or in documents that the applicant attaches and uploads with the application. Each scored question is assigned a raw point value. The two sections of the application are then assigned weights such that all scored questions in the first section represent 55% of the available total points, and all scored questions in the second section account for 45% of the available total points.

19. The first section is comprised of two subsections: (a) address (accounting for 40%), and (b) relationship (accounting for 15%).

20. The address factor considers the residential address of the individual convicted of a marihuana-related offense at the time of the arrest or conviction. OCM uses Census Data from the years 1990, 2000, 2010, and 2020 on the median household income (MHHI) of all census tracts in the United States to create a ranking of each census tract compared to its county or

region. The address is scored based on this data such that individuals who lived in areas with low MHHI, in "housing provided by a public housing authority recognized by the United States Department of Housing and Urban Development" (ECF 20-3 p. 6), or who were homeless anywhere in the United States at the time of conviction are awarded the greater point values, and individuals who lived in higher income areas are awarded fewer points.

21. The relationship factor is based on whether the individual with sole control over the applicant was the person convicted of a marijuana-related offense or whether the person convicted of a marijuana-related offense was a spouse, child, guardian, or dependent of the person with sole control.

22. The second section, dealing with the applicant's qualifying business, and accounting for the remaining 45% of the applicant score, is used to evaluate the applicant's business experience. Questions related to business experience prioritize scoring for: (a) applicants who have operated businesses with physical locations where customers could visit or offering retail goods and services, and (b) applicants who have ran a business for at least four years, the length of the CAURD conditional period. Points were also granted for applicants with a qualifying business that were denied a bank loan in their early operations, recognizing entrepreneurs who faced hurdles due to their conviction and their ability to overcome the impacts of their conviction. Additionally, applicants are asked about any uncleared tax liens on the assets or property of the qualifying business, which is used as a proxy for evaluating fiscal responsibility and tax compliance. Applicants are also awarded points based on the number of employees at the business and the net revenue of the business, as identified on federal tax returns, to evaluate the qualifying business's overall capacity. The qualifying business is also

evaluated based on the MHHI conditions of the area where the qualifying business was located, with the purpose of identifying business owners operating in underserved and low-income areas.

23. Plaintiff received 23 of 55 possible weighted points on the justice involvement section. For the address subsection, Plaintiff received 8 of a possible 40 maximum weighted points because the residential address of the individual convicted of the marijuana-related offense was in a census tract in the top 25% of MHHI in the State of Michigan. For the relationship subsection, Plaintiff received the maximum weighted points of 15 because the person with sole control was the person who experienced the marijuana-related offense.

24. Plaintiff received a score of 18 on their qualifying business section of a possible 45 weighted points. Plaintiff's qualifying business received the maximum points for the number of years a business was owned, selling goods and products, having no outstanding tax liens against the qualifying business, and revenue generation. However, although the business sold goods and products it did not do so out of a storefront location where consumers can come, look at such products and purchase them there. The business was identified as non-retail, non-personal services, non-hospitality, "Other," which yielded no points. Additionally, Plaintiff's business had no employees and was not denied a bank loan.

25. Attached as Exhibit B is Plaintiff's score on each of the application sections as explained above, and their rank in relation to other applicants in the Finger Lakes region.

26. As such, even with a New York conviction, Plaintiff cannot receive a license because of the percentage of the score attributed to a criteria Plaintiff cannot satisfy.

Dated: November 21, 2022
      New York, New York

_____
Herb Barbot