UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

VARISCITE NY ONE, INC.,

                                                    *Plaintiff*,

                 -against-                                  22-CV-1013

STATE OF NEW YORK; NEW YORK STATE OFFICE         GLS/DJS
OF CANNABIS MANAGEMENT; AND CHRISTOPHER
ALEXANDER,

                                                    *Defendants*.

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO MODIFY THE COURT'S PRELIMINARY INJUNCTION AND, IN THE ALTERNATIVE, FOR A STAY PENDING APPEAL

                                                                LETITIA JAMES
                                                                Attorney General of the State of New York
                                                                 Attorney for Defendants State of New York,
                                                                 New York State Office of Cannabis
                                                                 Management and Christopher Alexander
                                                                 The Capitol
                                                                 Albany, New York 12224

Amanda Kuryluk
Assistant Attorney General, of Counsel
Bar Roll No. 516864
Telephone: (518) 776-2621
Fax: (518) 915-7740 (Not for service of papers)                   Date: November 22, 2022

**Table of Contents**

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS AND FACTUAL BACKGROUND ................................................... 2

STANDARD OF REVIEW ........................................................................................................... 3

ARGUMENT .................................................................................................................................. 4

    POINT I: THE COURT SHOULD NARROW THE GEOGRAPHIC SCOPE OF ITS PRELIMINARY INJUNCTION TO THE FINGER LAKES REGION ONLY ................................................................................................................................. 4

        A.    Defendants' Motion to Modify the Preliminary Injunction Should Be Granted Based on Recent Information that Was Not Available Earlier ............................................................................................................................ 4

        B.    Defendants' Motion to Modify the Preliminary Injunction Should also be Granted to Prevent Manifest Injustice in this Case ............................................................................................................................... 7

    POINT II: ALTERNATIVELY, THE COURT'S PRELIMINARY INJUNCTION SHOULD BE STAYED PENDING APPEAL ....................................................................... 9

        A.    Defendants Have Shown a Probability of Success on the Merits ............................................................................................................................. 10

        B.    Defendants Have Shown Irreparable Injury in the Absence of a Stay .......................................................................................................................... 12

        C.    A Stay Would Not Substantially Injure Plaintiffs ......................... 12

        D.    The Public Interest Favors a Stay ................................................. 13

CONCLUSION .............................................................................................................................. 14

## Table of Authorities

**CASES**                                                                                **PAGE(S)**

*135 Flat LLC v. Triadou SPV N.A.*,
    2016 U.S. Dist. LEXIS 82821 (S.D.N.Y. June 24, 2016)............................................................6

*American ORT, Inc. v. ORT Israel*,
    No. 07-Civ-2332(RJS), 2009 WL 233950..................................................................................3

*Califano v. Yamasaki*,
    442 U.S. 682 (1979).................................................................................................................7

*Constitution State Challenge, Inc. v. Nyemchek*,
    2001 U.S. Dist. LEXIS 7773, 2001 WL 640417 (D. Conn. June 1, 2001)................................6

*Davis v. New York City Hous. Auth.*,
    278 F.3d 64 (2d Cir. 2002).......................................................................................................4

*Delaney v. Selsky*,
    899 F. Supp. 923 (N.D.N.Y. 1995)..........................................................................................4

*Eastern Air Lines Inc. v. Civil Aeronautics Board*,
    261 F.2d 830 (2d Cir. 1958).....................................................................................................9

*Hilton v. Braunskill*,
    481 U.S. 770 (1986)...............................................................................................................10

*Johnson v. Cty. of Nassau*,
    82 F. Supp. 3d 533 (E.D.N.Y. 2015) .......................................................................................4

*Lynch v. Dukakis*,
    719 F.2d 504 (1st Cir. 1983)....................................................................................................7

*PLC Trenching Co. v. Newton*,
    No. 11-cv-0515, 2012 WL 1832150 (N.D.N.Y. May 18, 2012) ..............................................9

*Ramrattan v, Guzman*,
    2022 WL 16744278 (N.D.N.Y. November 7, 2022) ...............................................................4

*SEC v. CKB168 Holdings, Ltd.*,
    No. 13-CV-5584 (RRM), 2017 WL 4465726 (E.D.N.Y. June 20, 2017).................................7

*Sierra Club v. United States Army Corps of Eng'rs*,
    732 F.2d 253 (2d Cir.1984)..................................................................................................3, 4

*Thapa v. Gonzales*,
    460 F.3d 323 (2d Cir. 2006)...................................................................................................10

*United States v. New York*,
   No. 1:10-CV-1214 (GLS), 2022 WL 1473259 (N.D.N.Y. May 10, 2022)
   (Sharpe, J.) ..................................................................................................................4

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
   423 F.3d 137 (2d Cir. 2005) ......................................................................................3

**STATE STATUTES**

N.Y.S. Marihuana Regulation and Taxation Act ............................................................8

**FEDERAL STATUTES**

28 U.S.C.§ 1292(a)(1) .....................................................................................................3

**FEDERAL RULES**

Fed. R. Civ. P. 54(a) ........................................................................................................3

Fed. R. Civ. P. 59(e) ........................................................................................................3

Fed. R. Civ. P. 62(d) ........................................................................................................9

Fed. R. Civ. P. 65 .............................................................................................................2

**LOCAL RULES**

L.R. 7.1(g) ....................................................................................................................3, 4

**PRELIMINARY STATEMENT**

This Memorandum of Law is submitted on behalf of Defendants State of New York, New York State Office of Cannabis Management ("OCM"), and Christopher Alexander, Executive Director of OCM, and in support of Defendants' motion to modify the Court's November 10, 2022 Decision and Order on Plaintiff's motion for a preliminary injunction ("Preliminary Injunction Order") or, in the alternative, grant a stay pending appeal. Having found that Plaintiff Variscite One, Inc. ("Variscite" or "Plaintiff") had established a likelihood of success on the merits of its claim that certain requirements to receive a retail license to sell recreational marihuana under the Conditional Adult-Use Retail Dispensary ("CAURD") program violated the dormant Commerce Clause, the court issued a preliminary injunction barring Defendants from issuing any cannabis licenses for the following five (out of 14 total) geographic regions: Finger Lakes, Central New York, Western New York, Mid-Hudson, and Brooklyn during the pendency of this action.

Based on new evidence that was not available at the time Plaintiff's motion for a preliminary injunction was fully briefed and which Defendants did not learn in time to present to the Court before it issued the Preliminary Injunction Order, and in order to prevent manifest injustice, Defendants respectfully request that the Court modify its injunction so as to narrow its geographic scope to the Finger Lakes Region only, which is Plaintiff's first-chosen geographical preference region listed on its CAURD Application. As set forth in Plaintiff's previously filed CAURD Application (*see* ECF No. 6-15) and the annexed Supplemental Declaration of Herb Barbot dated November 21, 2022 ("Barbot Supp. Decl."), all CAURD Program applicants are being considered for their first preferred region *only*. As the CAURD Application explained, applicants would have been considered for their alternative preferred regions only in the event that there had been more available licenses in those regions than the number of applicants who ranked those regions as their first preference, creating a gap that needed to be filled. As it turned out, that

1

was not the case for any of the regions. Since there are currently more applications for *each* region—including those chosen as Plaintiff's alternative regions—than the number of available licenses for each region, only an applicant's first pick will be considered and scored. Thus, *just like all other license applicants*, Plaintiff will not be considered for its alternative selections—in Plaintiff's case, Central New York, Western New York, Mid-Hudson, and Brooklyn regions. Consequently, the injunction should be narrowed to Plaintiff's top preference area, the Finger Lakes Region—the only region for which Plaintiff's application will be considered.

Moreover, the modification of the injunction is necessary to prevent manifest injustice. As Barbot explains, by unnecessarily including the four additional regions in the injunction, an additional 54 dispensaries will be unable to open. This will cause hardship to multiple stakeholders who have taken actions in reliance on the CAURD Program, most prominently licensed cultivators—mostly small family farms—who will have great difficulty selling their recently harvested product. The resulting retail bottleneck can be significantly alleviated by narrowing the geographic scope of the injunction as requested. In the alternative, if the Court declines the requested modification, Defendants intend to appeal, and request a stay of the preliminary injunction pending appeal.

## STATEMENT OF FACTS AND FACTUAL BACKGROUND

The Court is familiar with the facts of this case. Briefly, Plaintiff commenced this action with the filing of a Verified Complaint on September 26, 2022, challenging Defendants' CAURD Application Program on grounds that it violates the Plaintiffs' constitutional rights under the dormant Commerce Clause. *See generally*, ECF No. 1.

Thereafter, on October 4, 2022, Plaintiff filed a motion by Order to Show Cause seeking a temporary restraining order ("TRO") and preliminary injunction pursuant to Federal Rule of Civil Procedure 65, seeking to enjoin Defendants from issuing cannabis licenses under the CAURD

Application Program. ECF No. 6. By Text Order dated October 5, 2022, the Court, *sua sponte*, denied Plaintiff's motion for a TRO and reserved decision on Plaintiff's motion for a preliminary injunction pending completion of expediated briefing. ECF No. 9. Following briefing by the parties (ECF Nos. 6, 20, & 21), oral argument was held on November 9, 2022.

By order dated November 10, 2022, the Court granted Plaintiff's motion for a preliminary injunction and enjoined Defendants from issuing any cannabis licenses under the CAURD Application Program for the five geographic regions noted above. ECF No. 28. The Court found that Plaintiff had shown a likelihood of success on its single claim that Defendants violated Plaintiff's constitutional rights under the dormant Commerce Clause, as well as irreparable harm and the equities in its favor. ECF No. 28.

## STANDARD OF REVIEW

Defendants' motion to modify the preliminary injunction is brought under Federal Rule of Civil Procedure 59(e) and Local Rule 7.1(g). "Rule 59(e) permits a modification of a 'judgment,' which is defined by Rule 54(a) as including "a decree and any order from which an appeal lies." Because a grant of a preliminary injunction is an interlocutory order from which an appeal lies, *see* 28 U.S.C. § 1292(a)(1), "a motion pursuant to Rule 59(e) to modify a preliminary injunction order is procedurally proper." *American ORT, Inc. v. ORT Israel*, No. 07-Civ-2332(RJS), 2009 WL 233950, at 2, note 2 (S.D.N.Y. 2009). "An injunction is an ambulatory remedy that marches along according to the nature of the proceeding. It is executory and subject to adaption as events may shape the need, except where rights are fully accrued or facts are so nearly permanent as to be substantially impervious to change." *Sierra Club v. United States Army Corps of Eng'rs,* 732 F.2d 253, 256 (2d Cir.1984) (citing *United States v. Swift & Co*, 286 U.S. 106, 114 (1932)). The Second Circuit has stated that a district court's "decision whether to modify a preliminary

3

injunction involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005) (citing *Sierra Club*, 732 F.2d at 256). "The test of that discretion is measured by whether the requested modification effectuates or thwarts the purpose behind the injunction." *Sierra Club v. U.S. Army Corps of Engineers*, 732 F.2d at 257. Moreover, as with other interlocutory orders, an injunction may be modified to correct a "manifest injustice." *Johnson v. Cty. of Nassau*, 82 F. Supp. 3d 533, 535 (E.D.N.Y. 2015) (internal quotation marks omitted).

Under Local Rule 7.1(g), a court may reconsider its previous ruling under three circumstances: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. *Ramrattan v. Guzman*, 2022 WL 16744278, at *1 (N.D.N.Y. November 7, 2022); *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (citing, *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).

## ARGUMENT
## POINT I

**THE COURT SHOULD NARROW THE GEOGRAPHIC SCOPE OF ITS PRELIMINARY INJUNCTION TO THE FINGER LAKES REGION ONLY**

**A. Defendants' Motion to Modify the Preliminary Injunction Should Be Granted Based on Recent Information that Was Not Available Earlier**

A motion to modify a preliminary injunction may be based on evidence that was not available at the time the injunction was issued. It is "well established that a district court has the power, in the exercise of its discretion, to modify its past injunctive decrees in order to accommodate changed circumstances." *Davis v. New York City Hous. Auth.*, 278 F.3d 64, 88 (2d Cir. 2002); *see also United States v. New York*, No. 1:10-CV-1214 (GLS), 2022 WL 1473259, at

\*2 (N.D.N.Y. May 10, 2022) (Sharpe, J.) ("modification of the court's prior injunction order is sensible and necessary to avoid a chaotic situation for all New York voters").

In this case, as explained in the accompanying Supplemental Declaration of Herb Barbot, at the time Defendants submitted their papers in opposition to Plaintiff's motion for a preliminary injunction, Defendants had not yet confirmed the number of applicants who had applied for licenses under the CAURD Program, and thus, did not know whether an applicant, including Plaintiff, would be eligible for consideration for a license beyond that applicant's first preference as listed in order on their application. *See* Barbot Supp. Decl. at ¶¶ 2 – 7. Following oral argument on November 9, 2022,[1] Defendants confirmed the total number of applicants that have applied for a CAURD license in each geographic region, and further confirmed that—*like all other applicants*—even if Plaintiff were to qualify for a license, Plaintiff would not be able to obtain a license beyond its first geographic choice. Barbot Supp. Decl. at ¶¶ 3 – 8. Here, Plaintiff's first choice was the Finger Lakes, *id.* at ¶ 3; Central New York, Western New York, Mid-Hudson, and Brooklyn are listed as Plaintiff's second, third, fourth, and fifth choices. *See* Barbot Supp. Decl. at ¶ 3; ECF No. 20-3 at p. 11.

Indeed, the CAURD application form explained that, given a sufficient number of applicants in each region, this would be the possible outcome: "Applicants will be considered for their 'Preference 1' region and will *only be considered for their 'Preference 2' region where there are more available licenses in a region than the number of applicants who have ranked such region as their first preference.*" *See* Barbot Supp. Decl. at ¶ 5; ECF No. 6-15 (emphasis added).

---

[1] Although Defendants were in the process of preparing a submission on this point the day following the argument, the Court issued the Preliminary Injunction Order before Defendants were able to make the submission.

The State received 903 applications for 150 licenses, and the number of applicants for each region far exceeds the total number of available licenses per region. Barbot Supp. Decl. at ¶¶ 6 – 7. Specifically, the State received over 40 applications for the Finger Lakes region as a first preference, for which there are 9 licenses available. *Id.* With respect to the non-primary regions chosen by Plaintiff, over 20 applications were received for Central New York region, for which there are 7 licenses available. *Id.* The State received over 50 applications for Western New York with only 11 licenses available. *Id.* Seventy-five applications were received for the Mid-Hudson region, with only 17 licenses available. *Id.* Finally, 110 applications were received for Brooklyn, yet only 19 licenses are available. *Id.* Given that the total number of applicants in each region far exceeds the number of licenses available for those regions, under no circumstances would Plaintiff's second, third, fourth, or fifth regional preferences have been considered in any event. *Id.* at ¶ 7.

Based on the foregoing new information, the only region where the Plaintiff could conceivably suffer competitive injury is its first preference region, Finger Lakes, and accordingly, the Court should grant Defendants' motion to narrow the preliminary injunction to the Finger Lakes region only. Even if successful in this litigation—and even assuming that Plaintiff could otherwise qualify for a license absent the challenged program requirements (which it cannot)—Plaintiff would not be entitled to a license in any other region, and therefore the relief previously granted by this Court is no longer in proportion with the harm alleged. "Preliminary injunctive relief . . . should be no more burdensome than necessary to preserve a plaintiff's ability to obtain the complete relief to which it is entitled." *CF 135 Flat LLC v. Triadou SPV N.A.*, 2016 U.S. Dist. LEXIS 82821, at *29 (S.D.N.Y. June 24, 2016) (citing, *California v. American Stores Co.*, 872 F.2d 837, 845 (9th Cir. 1989), rev'd on other grounds, 495 U.S. 271 (1990)); *see also Constitution*

*State Challenge, Inc. v. Nyemchek*, 2001 U.S. Dist. LEXIS 7773, 2001 WL 640417, at *7 (D. Conn. June 1, 2001) (finding an injunction "not narrowly tailored to the irreparable harm alleged by the plaintiffs," and, as a result "arbitrary and overly broad"). "The scope of injunctive relief is dictated by the extent of the violation established and the relief afforded may not be more burdensome than necessary to redress the complaining parties." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *Lynch v. Dukakis*, 719 F.2d 504, 514 (1st Cir. 1983).

### B. Defendants' Motion to Modify the Preliminary Injunction Should also be Granted to Prevent Manifest Injustice in this Case

A preliminary injunction may also be modified if the movant demonstrates the need to prevent "manifest injustice." *SEC v. CKB168 Holdings, Ltd.*, No. 13-CV-5584 (RRM), 2017 WL 4465726, at *4 (E.D.N.Y. June 20, 2017) (citation omitted), *report and recommendation adopted*, No. 13-CV-5584 (RRM/RLM), 2017 WL 4358749 (E.D.N.Y. Sept. 27, 2017). Here, as discussed in detail above under Point I (A), based on recent information regarding the number of applicants and the fact that Plaintiff would never be able to obtain a CAURD license beyond its first geographic preference, which is the Finger Lakes, various stakeholders, including Defendants, will suffer a manifest injustice if the injunction remains in effect for Central New York, Western New York, Mid-Hudson, and Brooklyn, which are Plaintiff's second, third, fourth, and fifth preferred geographic regions for licenses.

As discussed in the initial declaration of Herb Barbot, which was previously submitted by Defendants in opposition to Plaintiff's motion for a preliminary injunction, the current injunction blocks the licensing of the last piece of the regulated supply chain—the retail dispensaries. Pursuant to a legislative enactment in February 2022, the State was required to license 261 cultivators who, in order to qualify, were previously licensed as hemp farmers. The majority of these cultivators are small family farms. The State was similarly required to license 25 processors,

7

who were also previously licensed in the State's hemp program. ECF No. 20 at ¶ 61. Each of the farmers have one acre of growing canopy and have already produced a combined estimate of 300,000 pounds of harvested cannabis flower, with a total production value of up to $1.5 billion. ECF No. 20 at ¶ 62. Because of the Cannabis Law's two-tier market structure (where cultivators must be independent of retailers), retailers are the only license type authorized to sell cannabis to consumers. If the farmers have insufficient outlets for their crop, they will lose the billions of dollars that have been collectively invested in their businesses, potentially lose their businesses, and will otherwise be forced to watch their crops rot and expire or sell their crops illegally on the illicit market. ECF No. 20 at ¶ 62.

As further detailed in Barbot's supplemental declaration, the four additional regions encompassed by the injunction (Central New York, Western New York, Mid-Hudson and Brooklyn) will result in an additional 54 dispensaries being unable to operate. Barbot Supp. Decl. ¶¶ 9 – 10. Almost half of the total number of adult-use conditional cultivators licensed by the State (121 out of 262) are located in the four additionally enjoined regions. *Id.* ¶ 11. The vast majority of these cultivators are small family farmers who have invested significant savings in growing the new crop. *Id.* ¶ 11. Yet the injunction against retail licenses in those four regions will foreclose to them important consumer markets and require them to travel much greater distances to sell their product in order to reach dispensaries in non-enjoined markets who may prefer to purchase product from suppliers closer to their locations. *Id.* ¶ 13. The injunction's extension to the four additional regions will also harm processors, 16 (out of 25) of which are located in these four regions. *Id.* ¶ 12. Other groups will be harmed as well, including landlords to retail dispensaries, consumers, and the State generally, in the form of lost tax revenue, less economic activity, and limited supplies of safe, tested, and legal product. *Id.* ¶¶ 12 – 15.

There is also a concern about farmers offloading their product on the illegal market. The CAURD licensees are intended to displace illicit activity that has risen to take advantage of the absence of legal cannabis supply since decriminalization. ECF No. 20 at ¶ 63. The illicit market has not ceased growing and thriving since the passage of the Marihuana Regulation and Taxation Act, with unlicensed businesses posing as licensed businesses deceiving consumers, selling products that are marketed to children often resembling common "candy" or other well-known brands. OCM has already issued cease and desist letters to dozens of violators selling cannabis without a license. *See* Enforcement Actions, ECF No. 20 at ¶ 63.

The substantial hardship to the aforementioned farmers and the concern about diversion to the illegal market would be significantly lessened if the scope of the Court's injunction was limited only to the Finger Lakes region. Under *Eastern Air Lines*, the Court may consider whether there will be "substantial harm to other interested persons." *Eastern Air Lines Inc. v. Civil Aeronautics Board*, 261 F.2d 830 (2d Cir. 1958). In short, in light of the recent information that Plaintiff would under no circumstances receive a license for any region other than the Finger Lakes, coupled with the fact that the scope of the current injunction, if left in place, would cause a significant hardship to stakeholders who have acted in reliance on the availability of retail dispensaries, in addition to the harm to the State of New York generally, the Court should modify its current Order as requested.

## POINT II

**ALTERNATIVELY, THE COURT'S PRELIMINARY INJUNCTION SHOULD BE STAYED PENDING APPEAL**

If the Court declines to narrow the preliminary injunction as requested, Defendants intend to appeal to the Second Circuit Court of Appeals, and request that this Court stay its injunction pending appeal. Fed. R. Civ. P. 62(d); Fed. R. App. Pr. 8(a) (requiring that a motion to the Court

of Appeals to suspend a district court's injunction show that the same motion was first made to the district court). On a motion for a stay pending appeal, the Court must consider the following factors: "(1) the strength of the applicant's showing that he will succeed on appeal on the merits; (2) the danger that the applicant will be irreparably injured if the court denies the stay; (3) whether the stay will substantially harm other interested parties; and (4) the public interest in granting the stay." *PLC Trenching Co. v. Newton,* No. 11-cv-0515, 2012 WL 1832150, *1 (N.D.N.Y. May 18, 2012); *accord Hilton v. Braunskill,* 481 U.S. 770, 776-77 (1986); *Thapa v. Gonzales,* 460 F.3d 323, 334 (2d Cir. 2006). As shown below, all four factors favor Defendants.

### A. Defendants Have Shown a Probability of Success on the Merits

Defendants are likely to succeed on appeal. We understand, of course, that the Court has already ruled against Defendants and entered an injunction. However, that does not preclude an order staying the injunction pending appeal. The degree of probability of success that must be shown varies according to the court's assessment of the other stay factors. *Thapa*, *supra,* at 334-35. Thus, where the balance of hardships tips "decidedly" in favor of a stay, the moving party need only show "some possibility of success." *Id.* at 335.

Here, Defendants made the showing necessary to support a stay. The Court's decision to grant a preliminary injunction rested largely on the premise that Plaintiff demonstrated a likelihood of success on the merits that the CAURD Program violated Plaintiffs' rights under the dormant Commerce Clause by virtue of the "significant presence requirement" and the fact that at least 51% of a corporate applicant be owned by a "justice involved" individual, who must provide proof of his or her residency at the time of the marihuana related arrest or conviction (*see* ECF No. 28); however in so holding, the Court did not take into consideration that regardless of the aforementioned factors, Plaintiff *still* did not score high enough on the

10

application to receive a license. Barbot Supp. Decl. ¶ 17. And that is so despite the fact that Plaintiff satisfied the "significant presence" requirement and received full credit for having a New York marihuana-related conviction.[2] Barbot Supp. Dec. ¶ 17.

In fact, Plaintiff scored in the bottom quartile of applicants for the Finger Lakes Region—again, setting aside the requirements that Plaintiff challenges in this action. This means that Plaintiff did not score high enough to receive a license even in that region. Barbot Supp. Decl. ¶ 17. As Barbot explains, the CAURD application is divided into two sections, the "justice involvement" section weighted at 55% of the overall score, and the "qualifying business" section weighted at 45% of the overall score. Barbot Supp. Decl. ¶ 18. Of the 55% weight given to the "justice involvement" section, the single biggest selection criterion—accounting for 40% out of the total application score—is the median income of the area where the justice-involved person lived at the time of his or her marihuana-related conviction. Barbot Supp. Decl. ¶¶ 18 – 19. Yet Plaintiff received only 8 of a possible 40 weighted points for this section, because the majority-owner's residential address was located in a high-income area according to Michigan census data. Barbot Supp. Decl. ¶ 23. Moreover, Plaintiff's low address score was not the only deficiency in its application: Plaintiff received only 18 of a possible 45 weighted points on the "qualifying business section" because, while Plaintiff's business sold goods, it was not a storefront or retail business. Barbot Supp. Decl. ¶ 24.

Accordingly, even though Plaintiff received full credit for having a New York marihuana-related conviction, and even though Plaintiff satisfied the other challenged

---

[2] As explained in Barbot's supplemental declaration, Plaintiff erroneously checked that its majority owner had a New York conviction, whereas it uploaded evidence of a Michigan conviction. But even giving Plaintiff full credit for this conviction (as if it were a New York conviction), Plaintiff still did not score high enough on its application to warrant a license.  Barbot Supp. Decl. ¶ 17.

11

requirement of significant presence, Plaintiff still would not receive a license. Plaintiff thus has not incurred an injury that can be redressed through the injunction.

### B.  Defendants Have Shown Irreparable Injury in the Absence of a Stay

For the same reasons discussed above in Point I (B), Defendants and the State of New York will suffer irreparable injury if the Court denies a stay. In particular, as discussed in the declaration and supplemental declaration of Herb Barbot, if the farmers, who were already issued cultivating licenses, have nowhere to sell their crop, they will lose the millions of dollars that have been collectively invested in their businesses, some may lose their businesses, and they will otherwise be forced into the predicament of either watching their crops rot and expire or selling them on the illicit market, as discussed above—in addition to the harm to other stakeholders. *See also* ECF No. 20 at ¶¶ 61- 62.

### C.  A Stay Would Not Substantially Injure Plaintiffs

For the same reasons discussed above under Point II (B),  Plaintiff cannot identify an injury substantial enough to outweigh the risk of harm to Defendants and the farmers waiting to sell their crop in the areas prohibited by the injunction. This is especially true given that Plaintiff fails to establish that it has suffered a concrete injury from either New York State Cannabis Laws, Cannabis regulations, or the CAURD Application Program because Plaintiff does not qualify for a CAURD license under any circumstances. As explained above, Plaintiff did not score sufficiently high on its application to qualify for a license, without regard for the challenged program requirements. *See* ECF No. 20 at ¶¶30-31; Barbot Supp. Dec. ¶ 17. This holds true even if Plaintiff is awarded full points for having a New York conviction. ECF No. 20 at ¶¶30-31.

### D. The Public Interest Favors a Stay

Finally, that for the same reasons discussed in detail above under Points I (B) & II (B), the public interest in allowing local farmers to sell their crops, the need for sufficient retail outlets to discourage the sale of product on the illicit market, and the harm to other stakeholders such as landlords, consumers, and the State from the suspension of the CAURD program in four regions where Plaintiff cannot suffer competitive injury, all favor a stay of the Court's preliminary injunction pending appeal.

## CONCLUSION

For the reasons stated above, Defendants' motion to modify the Court's November 10, 2022 Preliminary Injunction Order should be granted in all respects. Alternatively, in the event that the Court denies Defendants' motion for modification, Defendants respectfully request that this Court grant Defendants' motion for a stay of the November 10, 2022 Preliminary Injunction Order pending appeal.

Dated:      Albany, New York
            November 22, 2022

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants New York State Office
      of Cannabis Management and State of
      New York
The Capitol
Albany, New York  12224


By: *s/ Amanda Kuryluk*
Amanda Kuryluk
Assistant Attorney General, of Counsel
Bar Roll No. 516864
Telephone:  (518) 776-2621
Fax:  (518) 915-7740 (Not for service of papers)
Email: amanda.kuryluk@ag.ny.gov

TO:   Thomas J. Higgs, Esq.
      Christian E. Kernkamp, Esq.
      (via ECF)