UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

VARISCITE NY ONE, INC.,

*Plaintiff*,

-against-                                                              22-CV-1013

STATE OF NEW YORK; NEW YORK STATE OFFICE                               GLS/DJS
OF CANNABIS MANAGEMENT; AND CHRISTOPHER
ALEXANDER,

*Defendants*.

_____

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE
12(b)(1) AND 12(b)(6)**

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants State of New York,
New York State Office of Cannabis
Management, and Christopher Alexander
The Capitol
Albany, New York  12224

Amanda Kuryluk
Assistant Attorney General, of Counsel
Bar Roll No. 516864
Telephone:  (518) 776-2621
Fax:  (518) 915-7740 (Not for service of papers)                    Date: November 30, 2022

**Table of Contents**

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ....................................................................................................................... 1

    POINT I ....................................................................................................................... 1

        PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR LACK
        OF STANDING ...................................................................................................... 1

            A.      Defendants Properly Relied on Extrinsic Evidence in
                    Support of Their Motion to Dismiss under Rule 12(b)(1) .............. 1

            B.      Plaintiff Fails to Establish An Injury Caused by the
                    Challenged Requirements and Redressable by Relief
                    Concerning Them.................................................................................. 2

    POINT II ..................................................................................................................... 9

        PLAINTIFF'S CLAIMS AGAINST NEW YORK STATE AND OCM
        ARE BARRED BY THE ELEVENTH AMENDMENT ....................................... 9

    POINT III.................................................................................................................... 10

        PLAINTIFF'S REQUEST FOR LEAVE TO AMEND THE
        COMPLAINT SHOULD BE DENIED ................................................................. 10

**Table of Authorities**

CASES                                                                        PAGE(S)

*Ajamian v. New York*,
   2014 WL 3928448 (N.D.N.Y. August 11, 2014)..........................................................10

*Bradley v. Nolan*,
   2006 WL 3298384 (S.D.N.Y 2006)..........................................................................10

*California v. Texas*,
   141 S. Ct. 2104 (2021)...............................................................................................3

*Cuoco v. Moritsugu*,
   222 F.3d 99 (2d Cir. 2000)........................................................................................10

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)....................................................................................................3

*Dimond v. Darden Restaurants, Inc.*,
   2014 WL 3377105 (S.D.N.Y July 9, 2014) ...............................................................2

*Douglas v. New York State Adirondack Park Agency*,
   895 F. Supp. 2d 321 (N.D.N.Y. 2012).....................................................................10

*Ex Parte Young*,
   209 U.S. 123 (1908)..................................................................................................10

*In re Andrew Velez Const., Inc.*,
   373 B.R.. 262 (S.D.N.Y 2007)..................................................................................10

*Lowe v. City of Detroit*,
   544 F. Supp. 3d 804 (E.D. Mich. 2021).....................................................................7

*NPG, LLC v. City of Portland, Maine*,
   2020 WL 4741913 (D. Me. Aug. 14, 2020)................................................................7

*Pizzaguy Holdings, LLC v. New York State Liquor Auth.*,
   39 A.D.3d 1072 (3d Dept. 2007) ...............................................................................8

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
   *507 F.3d 117 (2d Cir. 2007)* ...................................................................................10

*Roberts v. New York*,
   911 F. Supp. 2d 149 (N.D.N.Y. 2012).......................................................................9

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
   752 F.3d 239 (2d Cir. 2014).......................................................................................2

*Toigo v. Dept. of Health and Senior Servs.*,
  549 F. Supp. 3d 985 (W.D. Mo. 2021) ......................................................................7

*Tran v. Bank of N.Y.*,
  *2014 WL 1225575* (S.D.N.Y. Mar. 24, 2014), aff'd, 592 F. App'x 24 (2d Cir.
  201) ........................................................................................................................10

*United States v. Smith*,
  945 F.3d 739 (2d Cir. 2019)......................................................................................4

*Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*,
  890 F. Supp. 2d 398 (S.D.N.Y. 2012).......................................................................3

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008).......................................................................................3

*Yatooma v. Burch Run Township*,
  2022 WL 1913601 (E.D. Mich. June 3, 2022).......................................................4, 7

*Zappia Middle East Constr. Co. v. Emirate Abu Dhabi*,
  215 F.3d 247 (2d Cir. 2000).......................................................................................2

CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. XI .........................................................................................1, 9, 10

STATE STATUTES

N.Y. Cannabis Law §§ 2& 8..........................................................................................9

FEDERAL RULES

Fed. R. Civ. P. 15(a)(2)................................................................................................10

Fed. R. Civ. P. 12(b)(1).............................................................................................1, 2

Fed. R. Civ. P.  12(b)(6)............................................................................................1, 2

Fed. R. Civ. P.  59(e) ....................................................................................................2

**PRELIMINARY STATEMENT**

Defendants State of New York, New York State Office of Cannabis Management ("OCM"), and Christopher Alexander, Executive Director of OCM, submit this Reply Memorandum of Law in further support of their motion, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), for an Order dismissing Plaintiff's Complaint in its entirety with prejudice. For the reasons set forth below and in Defendants' initial moving papers, the Complaint must be dismissed for lack of standing and failure to state a claim. Among other things, Plaintiff did not score high enough on its application to receive a Conditional Adult-Use Retail Dispensary ("CAURD") license, in light of the high number of applicants for a limited number of licenses, and for reasons entirely unrelated to the program requirements that it challenges as a violation of the dormant Commerce Clause. Plaintiff thus lacks a cognizable injury. We make the following points in reply.[1]

**ARGUMENT**

**POINT I**

**PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED FOR LACK OF
STANDING**

A.      **Defendants Properly Relied on Extrinsic Evidence in Support of Their Motion to
        Dismiss under Rule 12(b)(1)**

At the outset, Plaintiff incorrectly asserts that the Court should not consider Defendants' use of extrinsic evidence, such as (a) the Declaration of Herb Barbot (ECF No. 20), which was previously submitted in opposition to the Plaintiff's earlier motion for a preliminary injunction, or (b) information regarding Kenneth Gay, Plaintiff's majority owner and justice-involved

---

[1] We recognize that the Court has already ruled, in the context of Plaintiff's motion for a preliminary injunction, that plaintiff established a likelihood of success on the merits of its dormant Commerce Clause claim; our arguments here thus focus on standing and the Eleventh Amendment.

individual; in particular, the median income of his residential location at the time of his marihuana-related conviction, as identified by his address and Michigan census data, as compared with other CAURD applicants. Plaintiff argues (ECF No. 30 at 2) that consideration of this evidence is not proper on a motion to dismiss because it goes beyond the pleadings.

Contrary to Plaintiff's assertions, "[w]here subject matter jurisdiction is contested, as it is here, a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits." *Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at * 9 (S.D.N.Y July 9, 2014); *see also*, *Zappia Middle East Constr. Co. v. Emirate Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (holding that "[o]n a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing."); *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239 (2d Cir. 2014) (finding defendant's use of extrinsic evidence on a Rule 12(b)(1) motion proper).

Accordingly, because Defendants move to dismiss under Rule 12(b)(1) and dispute Plaintiff's standing, this Court may and should consider the extrinsic evidence introduced by Defendants, including the information contained in the Declaration of Herb Barbot (ECF No. 20), submitted in opposition to Plaintiff's motion for a preliminary injunction, and the Supplemental Declaration of Barbot (ECF No. 29-1), submitted in support of Defendants' Rule 59(e) motion to modify the Court's preliminary injunction.

**B.      Plaintiff Fails to Establish an Injury Caused by the Challenged Requirements and Redressable by Relief Concerning Them**

To have standing, a plaintiff must demonstrate (1) an injury-in-fact, which is a "concrete and particularized" harm to a "legally protected interest;" (2) causation in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant;

2

and (3) redressability, or non-speculative likelihood that the injury can be remedied by the requested relief. *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *see also California v. Texas*, 141 S. Ct. 2104, 2122 (2021); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). And courts may not entertain actions for declaratory judgment "when there is no standing to maintain the action." *Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 403 (S.D.N.Y. 2012). Plaintiff has not satisfied these requirements.

In the Complaint, Plaintiff alleges that the CAURD requirements caused injury "by depriving Plaintiff of the opportunity to fairly compete for a license to operate a storefront retail cannabis dispensary." ECF No. 1 at 8. In its opposition to Defendants' motion to dismiss, Plaintiff specified two ways in which it was denied this opportunity: (1) Plaintiff did not satisfy the CAURD Application Program's criterion of having significant presence in New York; and (2) its justice-involved owner has a cannabis conviction in Michigan and not New York. ECF No. 30 at 1-2.

Plaintiff has not been injured in the first way because OCM has reviewed Plaintiff's CAURD Application and concluded that Plaintiff satisfies the significant-presence requirement. In particular, Plaintiff indicated on its application that it satisfied significant presence by being organized as an entity under New York State law, among other reasons. *See* ECF No. 20 ¶¶ 40-41; 56-60. And OCM agrees. *See* ECF No. 20 ¶ 40; No. 29-1 ¶ 17 ("Defendants have confirmed that Plaintiff satisfies the significant presence factor as it is organized under the law of New York"). Thus, even assuming that the significant-presence requirement amounts to an "in-state residency preference" (ECF No. 30 at p. 1)—which Defendants contest—Plaintiff has not been injured by this requirement; it has not barred Plaintiff from being eligible to compete for a CAURD license.

And even if Plaintiff had asserted the expected denial of its application as an injury,[2] the significant-presence requirement is not fairly traceable to that injury, nor would relief concerning that requirement remedy the denial. Plaintiff thus lacks standing to challenge this requirement. *See United States v. Smith*, 945 F.3d 739 (2d Cir. 2019) (holding that plaintiff lacks standing to challenge statutory subsections "unrelated to the proscription of his conduct").

More fundamentally, Plaintiff fails to establish injury in either way identified by it because Plaintiff has not been deprived of an opportunity to fairly compete for a license. Even setting aside the challenged requirements of significant presence and a New York State conviction, Plaintiff did not score high enough on its CAURD Application to win a license. *See Yatooma v. Burch Run Township*, 2022 WL 1913601 at *1, 3 (E.D. Mich. June 3, 2022) (applicants for retail license to sell marihuana lacked standing to challenge discriminatory criteria because even absent those criteria, they would not win a license). For purposes of responding to the Complaint, OCM has evaluated Plaintiff's application and concluded that it should be denied without regard to the threshold requirements challenged by Plaintiff. *See* Barbot Decl. (ECF No. 20) at ¶ 46; Supp. Barbot Decl. (ECF No. 29-1) at ¶¶ 17-26 (explaining scoring mechanism and why Plaintiff did not score high enough); ECF No. 29-1, Ex. B (Plaintiff was the bottom 41 out of total of 43 applicants for the Finger Lakes region). Plaintiff received a low score because the address of its justice-involved individual (Mr. Gay) at the time of his marihuana-related conviction was determined to be in a high median income area, and because Plaintiff's qualifying business was not retail. *See* ECF No. 20 at ¶46; ECF No. 29-1 at ¶¶ 17-26. This result would not change even when Plaintiff

---

[2] Having thoroughly evaluated Plaintiff's CAURD Application, OCM intends to deny its application without regard to either significant presence (which Plaintiff satisfies) or the requirement that a marihuana-related conviction be from New York; and thus, Defendants no longer contest ripeness. OCM will seek permission of the Court, however, before issuing a final determination on Plaintiff's application.

is given full credit for personally having a New York marihuana-related conviction, as it was for purposes of evaluating its application. ECF No. 29-1 at ¶¶ 17-26. As a result, even without regard to the threshold requirements, Plaintiff will not receive a CAURD license.

Plaintiff complains (ECF No. 30 at p. 3) that Defendants have never publicly revealed the evaluation process, the points awarded to an applicant for residency in a low-income area, or the total points available for a CAURD application. The Supplemental Declaration of Herb Barbot provides a full explanation of Defendants' scoring process and confirms that Plaintiff cannot qualify for a CAURD license under any circumstance. *See* ECF No. 29-1. As Director Barbot explained, Plaintiff was given full credit for its majority-owner, Mr. Gay, personally having a New Yok State conviction, despite the fact that his conviction was from Michigan. *Id.* at ¶¶ 17 & 26. Despite receiving full credit on this aspect of the application, and despite having demonstrated significant presence, the remainder of Plaintiff's score placed it in the bottom quartile of applicants for its first choice[3] of the Finger Lakes region—close to the bottom of the applicant pool— precluding Plaintiff from receiving a license irrespective of the challenged threshold requirements. *Id*. at ¶¶ 17-26.

To recap the evaluation process that Barbot has explained, the CAURD application consists of two sections: Justice-involvement, which is weighted 55 possible points out of 100, and qualifying business, which accounts for the remaining 45 possible points. Justice-involvement is further subdivided into the income (45 of 55) and relationship (15 of 55) subsections. Plaintiff received 23 out of 55 points for justice-involvement. For the relationship subsection, Plaintiff

---

[3]As Defendants explained on the motion to modify the preliminary injunction, all CAURD applicants will either receive their first choice of geographical region or be denied a license. No one will receive their alternative preferences. *See* ECF No. 29-1 at ¶¶ 5-8.

received the maximum weighted points of 15 because the marihuana-related conviction was

incurred by Mr. Gay personally (rather than a qualifying relative). *Id.* at ¶ 23.

For the income subsection, however, Plaintiff received only 8 out of a possible 40 weighted

points because the residential address given for Mr. Gay was located in a census tract that ranked

in the top 25% of median household income for his county in the State of Michigan. *Id.* at ¶¶ 20,

23.[4] Plaintiff's income score was significantly lower than other applicants for the Finger Lakes.

There are only nine available licenses in this region. And by the time of the injunction, OCM had

determined that three applicants for the Finger Lakes should receive a provisional license: Two

who scored 84.25 and one who scored 81.5. And each of these applicants received the maximum

score of 40 for its income. Of the top 20 applicants in the Finger Lakes, 14 received the maximum

income score of 40. By contrast, the highest scoring applicant with an income score of 8—like

Plaintiff—was the 24th highest ranked applicant in the Finger Lakes. Given the rate of licensing

among top scorers,  Plaintiff—the 41st highest scorer in this region—did not score high enough to

receive a license.

---

[4]More specifically, OCM ranked the median household income (MHHI) of the census tract where
the convicted person was residing against the MHHI of other census tracts in the region or county
in that particular state. The census tracts were assigned points for each quartile of MHHI. Census
tracts in the bottom quartile, representing those with the lowest 25% of MHHIs for that region,
received 32 weighted points; those that ranked in the next quartile received 24 weighted points;
those in the next quartile received 16 weighted points; and those that ranked in the highest quartile,
representing the top 25% of MHHIs for that region, received 8 weighted points. This calculation
was repeated using census data for each of the years 1980, 1990, 2000, 2010, and 2020. In its
application, Plaintiff provided the residential address of the convicted person as located in Battle
Creek, MI 49014-8123 at time of arrest or conviction (ECF No. 6-11), and the conviction occurred
in 2007. This address is located in Calhoun County in Michigan, which had 39 census tracts in the
2010 census, ranging in MHHI from $18,207 to $78,208. The MHHI of the census tract where this
address is located was $56,349 in the 2010 census. This places it in the highest income quartile for
Calhoun County, and therefore the address received 8 weighted points.

For the qualifying business section of the application, Plaintiff received a score of 18 out of 45 total possible weighted points. *Id.* at ¶ 24. While Plaintiff's qualifying business received the maximum points for the number of years a business was owned, for revenue generation, for selling goods and products, and for having no outstanding tax liens, it did not operate as a retail business. The business was identified as non-retail by Plaintiff, which yielded no points. *Id.* at ¶ 24.[5]

While Plaintiff cites to *NPG, LLC v. City of Portland, Maine*, 2020 WL 4741913 (D. Me. Aug. 14, 2020); *Lowe v. City of Detroit*, 544 F. Supp. 3d 804 (E.D. Mich. 2021); and *Toigo v. Dept. of Health and Senior Servs.*, 549 F. Supp. 3d 985 (W.D. Mo. 2021), in support of its standing argument, these cases are readily distinguishable. They involved challenges to strict residency requirements for licenses, but so far as we can tell in none of them did the government defendant even attempt to demonstrate that the plaintiff would be denied a license for reasons unrelated to the challenged requirements. And where the government did so, as in *Yatooma*, 2022 WL 1913601 at *3, the court dismissed the case for lack of standing. Here, even assuming the challenged CAURD requirements could be deemed equivalent to a strict residency requirement (which Defendants contest), Plaintiff *still* will not qualify for a license based on aspects of the application scoring whose general validity Plaintiff does not challenge (nor could challenge), such as considering the median income of the area where the applicant's majority owner resided or evaluating an application for retail experience.

Plaintiff also faults Defendants for not providing the specifics concerning the median income of Mr. Gay's area as compared with other CAURD applicants (ECF No. 30 at 2), but that

---

[5] On November 28, Plaintiff amended its CAURD Application, claiming that it had been denied a bank loan and had operated a personal services business. Although those changes would boost its score by 6.75 points (giving it a total score of 47.75), they would not materially improve Plaintiff's standing in the Finger Lakes: Plaintiff would be ranked 38 out of 43, rather than 41 out of 43. These amendments will not change the end result.

information has no relevance to the injury that Plaintiff asserted—which is not the prospect that its application will be denied, but its inability to fairly compete. And Plaintiff has not been deprived of an opportunity to compete. Even if Defendants had arbitrarily denied Plaintiff's application based on unrelated scoring factors, that would at most give rise to an injury cognizable in a state court Article 78 proceeding against OCM. *See, e.g., Pizzaguy Holdings, LLC v. New York State Liquor Auth.*, 39 A.D.3d 1072 (3d Dept. 2007) (plaintiff's recourse after the NYS Liquor Authority denied its application for a liquor license was to bring an Article 78 proceeding in state court). Such an injury under state law would not create standing for purpose of Plaintiff's federal claim.

In any event, Plaintiff's bare assertion that its application should not be rejected based on the median income of the area where its majority owner resided is insufficient to establish standing even if the denial on this basis could qualify as injury. Defendants have unequivocally stated in a sworn statement by OCM's Director of Operations that the address for Mr. Gay given by Plaintiff was in the top 25% of MHHI for his area (ECF No. 29-1, at ¶¶ 20, 23), resulting in Plaintiff's low score on this factor. We amplified upon that information above. *See supra* at p. 6; n.4.  Plaintiff has the burden of demonstrating standing, and nothing it has said has shifted that burden to Defendants so as to require them to provide even more evidence than the detailed explanations already given. Indeed, Plaintiff does not claim that Mr. Gay in fact resided in a low-income area. Although Plaintiff asserts in a footnote that the median income of Mr. Gay's area of residence was "less than half" of the income eligibility limit for New York City Public Housing and below the median income of Harlem, which contains a housing project, those are not apples-to-apples comparisons—in light of cost of living discrepancies across the county and within states, high income in one region may not be high in another. And some housing projects are located in otherwise high income areas. Nor does the income factor favor New York residents. As Barbot

explains, OCM uses national census data to evaluate addresses in other states in the same way as New York addresses. ECF No. 20 at ¶ 29-32. If the Court determines that more information is needed to resolve the issue of standing, however, Defendants are prepared to supplement their submissions.

**POINT II**

**PLAINTIFF'S CLAIMS AGAINST NEW YORK STATE AND OCM ARE BARRED BY THE ELEVENTH AMENDMENT**

Plaintiff asserts claims against the State of New York, New York State Office of Cannabis Management, and Christopher Alexander. *See* ECF No. 1. In opposition to Plaintiff's motion to dismiss, Plaintiff concedes that the State of New York should be dismissed from this case on the basis of Eleventh Amendment immunity. The Court should accordingly dismiss the State. For the same reason, Plaintiff's claims against OCM should also be dismissed. "Regardless of the type of relief sought, the Eleventh Amendment bars this Court from assuming jurisdiction over plaintiffs' claims asserted against the State of New York and its agencies." *Roberts v. New York*, 911 F. Supp. 2d 149, 159-160 (N.D.N.Y. 2012). OCM is a state agency: The Marihuana Regulation and Taxation Act created the new agency which is tasked with overseeing the regulation of medical cannabis, adult-use cannabis, cannabinoid hemp and hemp extracts. Cannabis Law § 2. The agency is housed within the Division of Alcoholic Beverage Control, although it is independent of that division. Cannabis Law § 8. Accordingly, the claims against OCM should be dismissed.

As it relates specifically to Defendant Alexander, Defendants agree that the Eleventh Amendment would not bar an injunction against Alexander prohibiting him from enforcing any

9

requirement found by the Court to be in violation of federal law, under the rule of *Ex Parte Young*,

209 U.S. 123 (1908).


## POINT III

### PLAINTIFF'S REQUEST FOR LEAVE TO AMEND THE COMPLAINT SHOULD BE DENIED

Federal Rule 15(a)(2) provides that courts should freely give leave to amend a complaint

when justice so requires.  *See, e.g.*, *Douglas v. New York State Adirondack Park Agency*, 895 F.

Supp. 2d 321, 335 (N.D.N.Y. 2012), *on reconsideration in part*, 2012 WL 5364344 (N.D.N.Y.

Oct. 30, 2012). Nevertheless, leave to amend may properly be denied where repleading would be

futile. (s*ee, Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 127 (2d Cir. 2007)*

(citation omitted); *see also, Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000)) and an

amendment to a pleading is futile  if the proposed new claim cannot withstand a motion to dismiss.

*See In re Andrew Velez Const., Inc*., 373 B.R.. 262, 270 (S.D.N.Y 2007); *see also*, *Bradley v.

Nolan*, 2006 WL 3298384, at * 2 (S.D.N.Y 2006) ("An amended complaint is futile if the new

claims cannot withstand a motion to dismiss").

In this case, for all of the reasons discussed in Defendants' initial moving papers and on

reply, allowing Plaintiff to amend the Complaint would be futile, and thus, Plaintiff's request

should be denied. *See, Tran v. Bank of N.Y., 2014 WL 1225575 at *6* (S.D.N.Y. Mar. 24, 2014)

(denying plaintiff's motion to amend the complaint on grounds of futility when plaintiff lacked

standing to assert its claims against the defendant), aff'd, 592 F. App'x 24 (2d Cir. 201)*; see also,

Ajamian v. New York*, 2014 WL 3928448, at *7 (N.D.N.Y. August 11, 2014) (dismissing plaintiff's

claims with prejudice where they were barred by Eleventh Amendment immunity).

Dated: Albany, New York
November 30, 2022

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants New York State Office
      of Cannabis Management and State of
      New York
The Capitol
Albany, New York  12224


By: s/ Amanda Kuryluk
Amanda Kuryluk
Assistant Attorney General, of Counsel
Bar Roll No. 516864
Telephone:  (518) 776-2621
Fax:  (518) 915-7740 (Not for service of papers)
Email: amanda.kuryluk@ag.ny.gov


TO:    Thomas J. Higgs, Esq.
       Christian E. Kernkamp, Esq.
       (via ECF)