UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VARISCITE NY ONE, INC.,

                    **Plaintiff,**

         **v.**

STATE OF NEW YORK et al.,

                    **Defendants.**
_____

**1:22-cv-1013
(GLS/DJS)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Kernkamp Law, APC<br>1801 Century Park East, 24th Floor<br>Los Angeles, CA 90067 | CHRISTIAN KERNKAMP, ESQ. |
| E. Stewart Jones Hacker Murphy, LLP<br>28 Second Street - Suite 203<br>Troy, NY 12180 | THOMAS J. HIGGS, ESQ. |
| **FOR THE DEFENDANTS:** | |
| New York State Attorney General<br>The Capitol<br>Albany, NY 12224 | MATTHEW GALLAGHER, ESQ.<br>AMANDA K. KURYLUK, ESQ.<br>JEFFREY W. LANG, ESQ. |

**Gary L. Sharpe
Senior District Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

### I.  <u>Introduction</u>

Plaintiff Variscite NY One, Inc. commenced this action against the

State of New York, the New York Office of Cannabis Management (OCM),

and the Executive Officer of OCM, Christopher Alexander, pursuant to 42

U.S.C. § 1983, alleging a violation of the dormant Commerce Clause.

(Compl., Dkt. No. 1.)  Now pending are defendants' motion for

reconsideration of the court's November 11, 2022 Memorandum-Decision

and Order (hereinafter, "the November Order"), which granted Variscite's

motion for a preliminary injunction, or, alternatively, to stay the November

Order pending appeal, (Dkt. No. 29), and motion to dismiss the complaint,

(Dkt. No. 22).  For the reasons that follow, defendants' motions are denied

except as to the State of New York which is dismissed from the action.

## II.  Background

Familiarity with the underlying facts are presumed and will be

repeated only as relevant.  For a full recitation of those facts, the parties

are referred to the November Order.  (Dkt. No. 28 at 2-10.)

## III.  Standards of Review

### A.  Motion to Dismiss

1.  *Rule 12(b)(1)*

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of the

complaint where the court lacks subject matter jurisdiction.  "The burden of

2

proving jurisdiction is on the party asserting it." *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996) (internal quotation marks and citation omitted).  In reviewing a Rule 12(b)(1) motion, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). "Federal Rule of Civil Procedure 12 (b)(1) . . . is the proper vehicle for challenging standing and ripeness." *Benjamin v. Town of Islip*, No. 20 CV 56, 2021 WL 8344132, at *2 (E.D.N.Y. Aug. 12, 2021) (citing  *Islamic Cmty. Ctr. for Mid Westchester v. City of Yonkers Landmark Pres. Bd.*, 742 F. App'x 521, 523 (2d. Cir. 2018)) (other citation omitted).

    2.   *Rule 12(b)(6)*

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

## B.   **Motion for Reconsideration**

Motions for reconsideration proceed in the Northern District of New

York under Local Rule 60.1 (formerly Rule 7.1(g)).[1]  "In order to prevail on

a motion for reconsideration, the movant must satisfy stringent

requirements."  *In re C-TC 9th Ave. P'ship v. Norton Co.*, 182 B.R. 1, 2

(N.D.N.Y. 1995).  Such motions "will generally be denied unless the moving

party can point to controlling decisions or data that the court

overlooked—matters, in other words, that might reasonably be expected to

alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*,

70 F.3d 255, 257 (2d Cir. 1995).  The prevailing rule "recognizes only three

---

[1]  Northern District of New York Local Rule 60.1 provides:

> Unless otherwise provided by the Court, by statute or rule . . . , a party may file and serve a motion for reconsideration or reargument no later than **FOURTEEN DAYS** after the entry of the challenged judgment, order, or decree. All motions for reconsideration shall conform with the requirements set forth in L.R. 7.1(a)(1) and (2). The briefing schedule and return date applicable to motions for reconsideration shall conform to L.R. 7.1(a). . . . The Court will decide motions for reconsideration or reargument on submission of the papers, without oral argument, unless the Court directs otherwise.

possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship*, 182 B.R. at 3 (citation omitted).  "[A] motion to reconsider should not be granted where the moving party seeks solely to re[-]litigate an issue already decided." *Shrader*, 70 F.3d at 257.

## C.   <u>Motion to Stay Pending Appeal</u>

A court may stay an order pending appeal, but "[a] stay is not a matter of right, even if irreparable injury might otherwise result.  It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks and citations omitted).  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34. A court will consider "four well-established factors" in determining whether to issue a stay pending an appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured

> absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*461 7th Ave. Market, Inc. v. Delshah 461 Seventh Ave., LLC (In re 461 7th Ave. Market, Inc.)*, No. 20-3555, 2021 WL 5917775, at *1 (2d Cir. Dec. 15, 2021) (citation omitted).

## IV.  Discussion

### A.  Motion to Dismiss

As a preliminary matter, in seeking dismissal defendants raise many of the same arguments asserted in their opposition to Variscite's motion for a preliminary injunction regarding whether the law and regulations at issue violate the dormant Commerce Clause.  (*Compare* Dkt. No. 22, Attach. 1 at 16-25, *with* Dkt. No. 20, Attach. 13 at 4-11.)  For the same reasons articulated in the November Order, (Dkt. No. 28 at 14-23), these arguments are rejected.

### 1.  Standing and Ripeness

Defendants also contend that dismissal is appropriate because Variscite is without standing to sue because it "fails to establish that it has suffered a concrete injury . . . because [it] does not qualify for a [Conditional Adult-Use Retail Dispensary (CAURD)] license under any

circumstances," and because OCM "has not made a determination on [Variscite]'s Application."  (Dkt. No. 22, Attach. 1 at 10-12).  Additionally, defendants argue that Variscite's alleged injury is not redressable because Variscite "is unable to obtain a sufficiently high score to qualify for [a CAURD] license[]. . . . [E]ven if [it] is awarded full points for having a New York conviction" given "the high level of household income for the area in which [the] address [provided in it's CAURD application] is located at the time of conviction."  (Dkt. No. 22, Attach. 1 at 14-15.)  Finally, defendants assert that Variscite's "alleged injury is remote and speculative, and as such fails to meet the [constitutional] ripeness requirement," and that Variscite's claims are also "prudentially unripe" because "they seek adjudication on issues that are contingent on future events."  (*Id.* at 13.) Variscite contends that, its unlawful exclusion from the CAURD application process constitutes an injury, and that "[a]n order enjoining [d]efendants from enforcing the unconstitutional provisions will allow [Variscite] to compete fairly . . . , thereby redressing [its] injury."  (Dkt. No. 30 at 1-4, 5.) Further, Variscite argues that its claims are constitutionally ripe because its application will be rejected "due to the unconstitutional residency preferences challenged," and waiting until the application is formally denied

would leave Variscite in a position where it would be "inequitable for the [c]ourt to issue an injunction clawing back licenses from other applicants" or grant damages to Variscite.  (*Id.* at 4.)  Finally, Variscite asserts that the action is prudentially ripe[2] because "no future event is strictly necessary to resolve the issue of whether [d]efendants' CAURD program violates the dormant Commerce Clause."  (*Id.* at 5.)

To establish constitutional standing under Article III, "a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Similarly, the ripeness doctrine dictates that

---

[2]  Variscite also calls into question whether "prudential ripeness is a valid doctrine after the Supreme Court's . . . decisions in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-26 (2014) and *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014)."  (Dkt. No. 30 at 4); *see Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 10 F.4th 87, 102 (2d Cir. 2021) (noting that "[s]ince *Lexmark* and *Susan B. Anthony*, we have not directly addressed whether the prudential ripeness doctrine remains good law" and only assumed that it is).  The court will take the same approach as the Second Circuit in *Revitalizing Auto Cmtys. Env't Response Tr.,* and "[a]ssum[e]" that the doctrine remains valid.  *See id.*

a court should not entertain a case in which the dispute has not yet "matured to a point that warrants decision." *Tri-State Video Corp. v. Town of Stephentown*, No. 97-CV-965, 1998 WL 72331, at *2 (N.D.N.Y. Feb. 13, 1998) (citing *Auerbach v. Bd. of Educ.*, 136 F.3d 104, 109 (2d Cir.1998)); *see N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 n.8 (2d Cir. 2008) ("Standing and ripeness are closely related doctrines that overlap most notably in the shared requirement that the [plaintiff's] injury be imminent rather than conjectural or hypothetical." (internal quotation marks and citations omitted)).

Prudential ripeness "constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it, and allows a court to determine that the case will be better decided later." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) (internal quotation marks omitted).  "In determining whether a claim is prudentially ripe, we ask whether the claim is fit for judicial resolution and whether and to what extent the parties will endure hardship if decision is withheld."  *Id.* (internal quotation marks and alterations omitted).

Here, Variscite has alleged a concrete injury.  While Variscite has not

9

had its application formally denied, its "alleged injury is not the denial itself but the disadvantage [it] face[s] in obtaining a license due to the" allegedly unconstitutional licencing scheme.  *NPG, LLC v. City of Portland*, No. 2:20-CV-00208, 2020 WL 4741913, at *6 (D. Me. Aug. 14, 2020); *see Northeastern Fl. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group . . . . [T]he 'injury in fact' is the inability to compete on an equal footing in the . . . process, not the loss of [the benefit]." (citations omitted)).  For similar reasons, defendants' argument that Variscite's "alleged injury is remote and speculative, and as such fails to meet the ripeness requirement," (Dkt. No. 22, Attach. 1 at 13), is equally unpersuasive.  *See NPG, LLC*, 2020 WL 4741913, at *6.

Further, defendants' argument that Variscite's injury is not redressable because under no circumstances would Variscite qualify for a license, (Dkt. No. 22, Attach. 1 at 14-15), is without merit.  Variscite is not seeking a license from the court, but, rather, judgement restraining defendants from "enforcing any portions of the Cannabis Law or Cannabis Regulations that favor New York residents over out-of-state residents," and

10

a declaration that certain portions of the law and regulations violate the

dormant Commerce Clause, (Compl. at 9-10), relief which the court can

provide.

Finally, regarding prudential ripeness, "the claim is fit for judicial

resolution," for the reasons already discussed, *see NPG, LLC*, 2020 WL

4741913, at *6 ("The claims are fit for review in part because they are legal

in nature.  Although whether the [p]laintiffs will succeed in obtaining a

license under the current scheme is uncertain . . . , the question of whether

the licensing scheme itself is unconstitutionally discriminatory does not

depend on future events."), and Variscite would likely "endure hardship if

[a] decision is withheld," *In re Methyl*, 725 F.3d at 110, because a delay in

resolution could potentially result in Variscite being left without any

adequate remedy, for the reasons noted by this court in the November

Order.  (Dkt. No. 28 at 25-26.)  Therefore, Variscite's claims are

prudentially ripe.

### 2.    *Sovereign Immunity*

The parties agree New York State should be dismissed from the

action pursuant to the Fourteenth Amendment, and that Alexander should

not be.  (Dkt. No. 30 at 7 ("[Variscite] concedes the Court may dismiss the

State of New York."); Dkt. No. 32 at 9-10 ("Defendants agree that the

Eleventh Amendment would not bar an injunction against Alexander.").)

The parties dispute, however, whether OCM is entitled to sovereign

immunity.  (Dkt. No. 22, Attach. 1 at 15-16; Dkt. No. 30 at 6-7.)

   The Eleventh Amendment has long been construed as barring a

citizen from bringing a suit against a state in federal court, under the

fundamental principle of "sovereign immunity."  *See* U.S. Const.

amend. XI ("The Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State."); *Pennhurst State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 100 (1984).  "State immunity extends not only

to the states, but to state agencies and to state officers who act on behalf

of the state."  *Clare-Lunny v. State of N.Y. United Court Sys.*, No. 6:14-cv-

455, 2014 WL 3819011, at *5 (N.D.N.Y. Aug. 4, 2014) (citing *Puerto Rico*

*Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47 (1993) (other

citations omitted).  Sovereign immunity "does not, however, extend to

'suits prosecuted against a municipal corporation or other governmental

entity which is not an arm of the State.'"  *Woods v. Rondout Valley Cent.*

12

*Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Alden v. Maine*, 527 U.S. 706 (1999)).

"In determining whether a putative state entity is, in fact, an arm of the state, courts look to 'the relationship between the State and the entity in question.'"  *Id.* (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).  To make such a determination, courts consider six factors:

> (1) how it is referred to in its documents of origin, (2) how its governing members are appointed, (3) how it is funded, (4) whether its function is traditionally one of local or state government, (5) whether the state has a veto power over the entity's actions, and (6) whether the entity's financial obligations are binding upon the state.

*McCrae v. H.N.S. Mgmt Co.*, No. 3:22-cv-00217, 2022 WL 16635390, at *4 (D. Conn. Nov. 2, 2022) (quoting *Walker v. City of Waterbury*, 253 F. App'x 58, 60-61 (2d Cir. 2007)).  "When all six factors do not align, [courts] also consider whether a suit against the entity in federal court would threaten the integrity of the state and expose its treasury to risk and remain mindful of [their] concern for the state fisc."  *Id.* (quoting *Walker*, 253 F. App'x 58 at 60-61).  "[W]here a defendant . . . governmental entity asserts the Eleventh Amendment . . . , the burden falls to that entity to

13

establish that it is an arm of the state such that it may be entitled to sovereign immunity." *Mallison v. Conn. Office of Early Childhood*, No. 3:21-CV-1641, 2022 WL 6771028, at *3 (D. Conn. Oct. 11, 2022) (internal quotation marks and citation omitted).

In support of their position that OCM is an arm of the State, defendants argue, for the first time in their reply brief, that: (1) that Cannabis Law "created [OCM] which is tasked with overseeing the regulation of medical cannabis, adult-use cannabis, cannabinoid hemp and hemp extracts" and (2) that OCM "is housed within the Division of Alcoholic Beverage Control, although it is independent of that division." (Dkt. No. 32 at 9.)  Because defendants' contentions regarding OCM being an arm of the State are raised for the first time in their reply brief they are not properly before the court and will not be considered.  *See Farmer v. United States*, 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) ("Courts have repeatedly held that arguments raised for the first time in reply briefs are waived" (collecting cases)).  Even if the court were to consider defendants' arguments, it has some doubt as to whether they would carry defendants' burden of establishing that OCM is an arm of the state.  Accordingly, defendant's motion to dismiss is denied on these

14

grounds, except as to New York State, who is dismissed on consent of the parties.

**B.**     **Motion for Reconsideration**

Defendants request that the court narrow the November Order so as to enjoin the issuance of CAURD licenses only in the Finger Lakes Region.  (Dkt. No. 29, Attach. 4 at 1.)  Defendants argue that such a modification is appropriate because, based on the procedures outlined by the CAURD application process and the number of applications received, Variscite would only be eligible for a licence in the Finger Lakes Region, and, that, at the time the preliminary injunction was briefed, they "had not yet confirmed the number of applicants who had applied for [CAURD] licenses . . . , and[,] thus, did not know whether . . . [Variscite] would be eligible for consideration for a license beyond" the Finger Lakes Region. (*Id.* at 5.)  Additionally, defendants contend that a narrowing of the preliminary injunction is necessary to prevent manifest injustice, because it would allow the four additional geographic regions to open their dispensaries, avoid financial harm to the farmers that have grown marijuana for these regions, and prevent spoilation and diversion of the marijuana into the illegal market.  (*Id.* at 7-9.)  Defendants also assert that

15

"[o]ther groups will be harmed [if the injunction remains unmodified], including landlords to retail dispensaries, consumers, and [New York] State generally, in the form of lost tax revenue, less economic activity, and limited supplies of safe, tested, and legal product." (*Id.* at 8.)  Variscite argues that defendants knew the number of CAURD license applicants before the preliminary injunction was fully briefed and that defendants' hardship argument rehashes the arguments already made in opposition to the motion for a preliminary injunction, which the court rejected.  (Dkt. No. 37 at 6-11.)

There are "three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship*, 182 B.R. at 3 (citation omitted).

Defendants' argument about their knowledge of the number of CAURD applications, (Dkt. No. 29, Attach. 4 at 5), cannot serve as the basis for their motion because that information was available to them on September 26, 2022, when the CAURD application deadline closed, (Compl. ¶ 22), and before the preliminary injunction motion was even filed.

16

Accordingly, the information does not constitute "new evidence not previously available." *In re C-TC 9th Ave. P'ship*, 182 B.R. at 3 (citation omitted).  Additionally, defendants' argument regarding manifest injustice is unpersuasive for the same reasons articulated in the November Order. (Dkt. No. 28 at 26-28 (noting that the balance of hardships tipped in favor of Variscite and that the public's interest was best served by enjoining the CAURD licensing process in the specified five regions).  Accordingly, defendants' motion is denied insofar as it seeks reconsideration of the November Order.

**C.    Motion for a Stay Pending Appeal**

Finally, defendants argue that the November Order should be stayed during the pendency of their appeal.  (Dkt. No. 29, Attach. 4 at 9-13.) Specifically, defendants assert that they are likely to succeed on appeal because in ruling on the preliminary injunction "the Court did not take into consideration that . . . [Variscite] did not score high enough on the application to receive a license."  (Dkt. No. 29, Attach. 4 at 10-11.) Defendants also contend that they have shown irreparable injury absent a stay, that Variscite would not be substantially injured if a stay was granted, and that the public interest favors a stay, reiterating the arguments they

made in connection with their request for reconsideration of the

preliminary injunction and opposition to the preliminary injunction motion.

(*Compare id.* at 12-13, *with id.* at 7-9, *and* Dkt. No. 20, Attach. 13 at 12-

15.)  Variscite asserts, among other arguments, that "[e]ven if [d]efendants

could show they would deny [Variscite]'s application . . . , [it] still has

standing to maintain this lawsuit and have the unconstitutional program

enjoined," and that defendants "offer nothing but uncited speculation" in

support of their arguments regarding the potential harm they face, as well

as the public's interest, which the court already rejected.  (Dkt. No. 37 at

15-19.)

Here, defendants have not made a strong showing that they are

likely to succeed on the merits because their argument regarding

Variscite's standing is unpersuasive for the reasons mentioned above.

*See supra* Part IV.A.1.   Additionally, for the reasons discussed already,

*see supra* Part IV.A.1., B., and in the November Order, (Dkt. No. 28 at 23-

28), defendants' arguments regarding irreparable harm to them, the

relative lack of harm Variscite faces, and the public interest are equally

unpersuasive.  Accordingly, defendants' motion for a stay of the

November Order is denied.

### D.   Additional Matters

Variscite requested that "[i]f the [c]ourt dismisses any claim, [it] . . .
[be] grant[ed] leave to amend."  (Dkt. No. 30 at 30.)  Because defendants'
motion to dismiss is denied, except as to New York State, which Variscite
consents to, this request is moot.[3]

Variscite additionally requests the court take judicial notice of
certain documents submitted in connection with their opposition to
defendants' motion for reconsideration, or, alternatively, a stay.  (Dkt.
No. 37, Attach. 1.)  Because those documents need not be considered by
the court in connection with the disposition of the motion, the court
declines to take judicial notice of them.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 22) is
**GRANTED IN PART** and **DENIED IN PART** as follows:

   **GRANTED** as to the State of New York; and

---

[3] However, it is worth noting that Variscite did not file a notice of
cross-motion or attach a copy of the proposed amended pleading to its
papers in accordance with Local Rule 15.1(a).

**DENIED** in all other respects; and it is further

**ORDERED** that the Clerk terminate the State of New York; and it is further

**ORDERED** that defendants' motion for reconsideration or stay pending appeal (Dkt. No. 29) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 31, 2023
Albany, New York

Gary L. Sharpe
U.S. District Judge

20